'08 CIV 5171

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD L. STONE and KIRBY McINERNEY LLP

    Plaintiffs,

    v.

EDWARD T. JOYCE; EDWARD T. JOYCE &
ASSOCIATES, P.C.; PAUL M. WEISS; FREED &
WEISS, LLC; JOHN RANDY PATCHETT and
PATCHETT LAW OFFICE

    Defendants.

Case No:

COMPLAINT

RECEIVED
S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs allege upon personal knowledge as to themselves and their own acts, and upon

information and belief as to all other matters, as follows:

## I.    JURISDICTION

1.    This court has subject matter jurisdiction over plaintiffs' claims pursuant to the

principles of diversity jurisdiction set forth at 28 U.S.C.A. § 1332.  This court has original

jurisdiction of this civil action in that the amount in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different States.  Plaintiff Kirby

McInerney LLP is a citizen of the State of New York; plaintiff Stone is a citizen of the State of

Florida; defendants Edward T. Joyce, Edward T. Joyce & Associates, P.C., John Randy Patchett,

Patchett Law Offices, Paul M. Weiss and Freed & Weiss, LLC are citizens of the State of Illinois.

2.    This court has personal jurisdiction over defendants.  Defendants transact business

in this state.  The contract at issue was negotiated, entered into and substantially performed in New

York. The claims asserted herein arise out of business transacted in this State. Defendant Joyce has

previously consented to the jurisdiction of this court in a related matter.  In addition, defendant Joyce

also transacts business in this state and defendants John Randy Patchett, Patchett Law Offices, Paul M. Weiss and Freed & Weiss, LLC are in privity with Joyce.

3.      Venue is proper in this district under 28 U.S.C. §1391. A substantial part of the events or omissions giving rise to the claim occurred in this judicial district, the contract was breached in New York, and the injuries occurred in this County.

## II.    THE PARTIES

4.      Plaintiff Kirby McInerney LLP (formerly known as Kirby McInerney & Squire, LLP and referred to hereafter as "Kirby McInerney") is a law firm located in the County and City of New York.

5.      Plaintiff Richard L. Stone is an attorney and Of Counsel to Kirby McInerney. Stone is a citizen of Florida.

6.      Defendant Edward T. Joyce & Associates, P.C. is a law firm located in Chicago, Illinois.

7.      Defendant Edward T. Joyce is the principal of the defendant Edward T. Joyce & Associates, P.C. Joyce is a citizen of Illinois. (Edward T. Joyce & Associates, P.C. and Edward T. Joyce are referred to collectively herein as "Joyce"). Joyce is named herein as a nominal defendant. Plaintiffs do not seek any relief against Joyce by filing this complaint.

8.      On December 15, 2006, plaintiffs and Joyce stipulated and agreed to submit this dispute to binding arbitration before a neutral arbitrator. The agreement was "so ordered" on the record by Judge Berman (the "Order"). (A copy of the Order is attached hereto as Exhibit 1). Subject to the Order, Joyce agreed to give up any claims he had with respect to the subject matter

2

here before the court (e.g., the allocation of the Aon fee award), and Joyce and plaintiffs agreed to dismiss the prior claim in this court without prejudice.

9.      Also pursuant to the Order, plaintiffs' dispute with Joyce was arbitrated before a neutral (JAMS) arbitrator who determined that the "clear and unambiguous" "Contract entitle[d] [Joyce] to 15% of the total award of the $19 million, plus a lodestar fee, without enhancement, for their work on the matter unrelated to preparing the Williamson[1] case." (A copy of the arbitrator's Final Order is attached hereto as Exhibit 2.) The arbitrator's award subsequently was confirmed by United States District Judge Timothy C. Batten, Sr. of the United States District Court for the Northern District of Georgia. (A copy of Judge Batten's 17-page Order is attached hereto as Exhibit 3.) Joyce has appealed from Judge Batten's Order. As such, Joyce is named herein as a nominal defendant. Plaintiffs do not seek any relief as against Joyce by filing this complaint.

10.     Defendant Freed & Weiss, LLC is a law firm located in Chicago, Illinois.

11.     Defendant Paul M. Weiss is the principal of the defendant Freed & Weiss, LLC. Weiss is a citizen of Illinois. (Freed & Weiss, LLC and Paul M. Weiss are referred to collectively herein as "Weiss").

12.     Defendant Patchett Law Office is a law firm located in Marion, Illinois.

13.     Defendant John Randy Patchett is the principal of the defendant Patchett Law Office. Patchett is a citizen of Illinois. (The Patchett Law Office and John Randy Patchett are referred to collectively herein as "Patchett").

---

[1] As described in paragraph 16, *infra*, "Williamson" refers to defendants' client Williamson County Agricultural Association.

14.     Defendants Edward T. Joyce & Associates, P.C., Edward T. Joyce, Freed & Weiss, LLC, Paul M. Weiss, Patchett Law Office, and John Randy Patchett are collectively referred to as "defendants."

## III.    FACTUAL ALLEGATIONS

15.     On August 19, 1999, plaintiffs commenced a class action captioned *Daniel v. Aon, et al.*, No. 99-CH-11893, in the Circuit Court of Cook County, Illinois, against Aon Corporation and its subsidiaries concerning undisclosed contingent commissions paid to Aon as insurance broker (the "Aon Action"). Plaintiffs represent the Court-certified class representative, Alan Daniel.

16.     On December 28, 2000, in the County of New York, State of New York, defendants and plaintiffs entered into a written agreement (referred to herein as "Contract") to join Williamson County Agricultural Association ("Williamson") as an additional class representative. The Contract was executed on or about January 4, 2001. Each of the parties to the Contract is a sophisticated lawyer or law firm engaged in the practice of class action litigation.

17.     The Contract provided that defendants were to be retained by plaintiffs Kirby McInerney and Stone as additional counsel in a pre-existing class action, the Aon Action. Pursuant to the Contract, defendants agreed to provide legal services to Kirby McInerney, Stone and defendants' client, Williamson.

18.     The Contract also provided that, in the event that certain specified circumstances were realized and defendants otherwise complied with the Contract, defendants would receive a part of the fees awarded to plaintiffs' counsel in the Aon Action for the work they performed relating to Williamson in that litigation.

19.     Defendants Weiss, Patchett, and Joyce are in privity respecting the Contract.

4

20. On July 28, 2004, the Illinois Circuit Court appointed Kirby McInerney as sole lead counsel for the class, which it also certified on that date (along with class representatives Alan Daniel and Williamson).

21. On or about March 30, 2006, the Illinois Circuit Court entered an order approving a class action settlement of the Aon Action, providing approximately $87 million in benefits and relief for the class and awarded class counsel attorneys' fees and expenses in the amount of $19,000,000 (the "Fee Award"). The Fee Award, as well as the final approval of the settlement of the Aon Action, are on appeal, and all appellate issues have been fully briefed by all parties to that proceeding.

22. Applying the Contract to the award of counsel fees meant that, assuming they met the Contract's conditions, defendants would be paid 15% of the $19 million award, in consideration for services defendants provided in connection with their client, Williamson, plus a lodestar fee, without enhancement, for their work on the Aon Action "unrelated to preparing the Williamson case."

## THE FEE ARBITRATION

23. Soon after the Fee Award was issued, defendants made clear that they would not abide by the fee allocation set forth in the Contract. Each of them sought to obtain a greater fee allocation. Kirby McInerney, court-appointed lead counsel in the Aon Action, then sued Joyce in this court to enforce the Contract.

24. Although they had not been named in the Stipulation and Order, defendants Patchett and Weiss had notice of the arbitration and had an opportunity to participate in the arbitration. Although the subject of the arbitration was interpretation of the Contract to which Patchett and

5

Weiss were parties, and although the arbitration concerned legal fees to be paid to them as a result of the Aon Action, Patchett and Weiss chose not to participate in the arbitration.

25.    Following proceedings before this court in a related matter (Case No. 06-CV-2433 (RB)), plaintiffs and Joyce entered into a Stipulation and Order agreeing to binding arbitration in the JAMS offices in Atlanta, Georgia.    Judge Richard M. Berman executed and so ordered the Stipulation on April 18, 2007. *See* Exhibit 1, hereto.

26.    Following a preliminary hearing in the arbitration held on June 11, 2007, plaintiffs and Joyce fully and thoroughly litigated the issues surrounding interpretation of the Contract and counsel's compensation in the Aon Action.    The parties fully briefed the contract interpretation issues. On July 13, 2007, the arbitrator, Hon. M. Conley Ingram (a former Justice of the Georgia Supreme Court and a Senior Judge for Cobb County (Georgia) Superior Court), rendered a "Partial Final Award", and granted plaintiffs' Motion for Disposition on the Contract. (A copy of the Partial Final Award is attached hereto as Exhibit 4).

27.    Thereafter, Joyce moved for reconsideration.    The reconsideration motion was fully briefed, and on August 8, 2007, the arbitrator rendered his final award in favor of plaintiffs. (*See* Exhibit 2, hereto).  The Final Award stated:

> It is the final judgment of the Arbitrator that the Contract in question is clear and unambiguous.  Paragraph 3 of that Contract entitles Williamson's Counsel to 15% of the total award of the $19 million, plus a lodestar fee, without enhancement, for their work on the matter unrelated to preparing the Williamson case.

In other words, the entire fee allocation issue has been fully and thoroughly resolved by the court-ordered arbitration.

28.    On August 15, 2007, after the arbitrator's award became final per JAMS arbitration rules, plaintiffs moved the United States District Court for an order confirming the arbitrator's final order, as required by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. In two separate briefs, defendant Joyce moved to vacate the arbitrator's award and opposed plaintiffs' petition for confirmation of that same award. Plaintiffs opposed all of Joyce's arguments, and the matter was fully briefed and was deemed submitted on December 5, 2007.

29.    On March 31, 2008, United States District Judge Timothy C. Batten, Sr. confirmed the arbitrator's order. (*See* Exhibit 3, hereto). All totaled, plaintiffs filed seven briefs in support of their interpretation of the Contract (including where appropriate supporting affidavits and declarations), and defendant Joyce and his firm filed seven briefs supporting their views.

30.    On May 1, 2008, defendant Joyce filed a Notice of Appeal to the Eleventh Circuit Court of Appeals.

31.    Because there is privity between defendants Weiss, Patchett and Joyce, established by, *inter alia*, their co-representation of Williamson, their execution of the Contract, and their joint participation in the Aon Action, collateral estoppel bars any further re-litigation of the issue of the fee allocation on the part of defendants Weiss and Patchett. *See Pharr v. Evergreen Garden, Inc.*, 123 Fed.Appx. 420, 424-25 (2d Cir. 2005).

## FIRST COUNT - BREACH OF CONTRACT
### (Asserted against defendants Patchett, the Patchett Law Office, Weiss and Freed & Weiss, LLC)

32.    Plaintiffs repeat and reallege each the foregoing allegations.

33.    Plaintiffs fully and completely fulfilled their responsibilities under the Contract and have tendered to defendants full and complete consideration for legal services due and owing pursuant to the Contract, an amount far in excess of $75,000.

34.    Defendants have rejected the tender and have demanded compensation substantially in excess of that which defendants agreed to accept pursuant to the Contract.

35.    Accordingly, defendants have stated that they would not abide by the Contract. Defendants have thus breached, and anticipatorily breached and repudiated, the Contract.

36.    By reason of defendants' breach of contract, plaintiffs have sustained damages in a sum in excess of $75,000, which amount will be determined at trial, together with interest on such amount.

37.    Plaintiffs seek a declaratory judgment that defendants Weiss and Patchett are bound by the Contract setting forth their fee allocation.

## SECOND COUNT - DECLARATORY RELIEF
### (Asserted against defendants Patchett and the Patchett Law Office, Weiss and Freed & Weiss)

38.    Plaintiffs repeat and reallege each of the foregoing allegations.

39.    Defendants Patchett and the Patchett Law Office, Weiss and Freed & Weiss, LLC co-represented Williamson with defendant Joyce.

40.    At all times, defendants Patchett and the Patchett Law Office, Weiss and Freed & Weiss, LLC shared a common interest with defendant Joyce, both in connection with this proceeding, and all proceedings relating to the fee allocation. In addition, all defendants were co-parties in the prior Aon Action. Throughout the proceedings, defendant Patchett relied upon Joyce's

8

arguments and briefing. Under New York law, defendants are and were in privity with each other as their interests are entirely aligned with those of Joyce.

41.    During the litigation of the Aon Action, defendant Joyce has spoken as the representative of Williamson's Counsel. He has held himself out as speaking on behalf of the triumvirate. Defendant Joyce has thoroughly litigated the matter of how, under the Contract, the attorneys' fees would be allocated to counsel representing Williamson before the JAMS arbitrator and thereafter before the United States District Court for the Northern District of Georgia.

42.    There is a complete identity of issues that was necessarily decided by the JAMS arbitrator and confirmed in the district court, that is decisive of the present action. The cumulative rulings of each of these sequential *fora* represent a ruling of a court of competent jurisdiction. As set forth, *supra*, defendant Joyce had a full and fair opportunity to litigate the issues, and, as thus his co-counsel, defendants Patchett and the Patchett Law Office, Weiss and Freed & Weiss, LLC had a full and fair opportunity to litigate the issues.

43.    Therefore, the arbitrator's judgment on the merits and the district court's confirmation order (Exhibits 2-4, hereto) are conclusive on the issues of fact and questions of law necessarily decided therein. Accordingly, the doctrine of collateral estoppel bars any further litigation on the matter and binds defendants Patchett and the Patchett Law Office, Weiss and Freed & Weiss, LLC to the outcome the arbitration proceeding.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray:

 (a) for a declaratory judgment that the Contract is enforceable in accordance with its terms;

 (b) that this court award damages in an amount to be proved at trial;

 (c) for a declaratory judgment finding Patchett and Weiss are bound by the decision of the arbitrator; and

 (d) for such other relief as this court may deem just equitable or proper, including the costs of this action.

Plaintiffs request a trial by jury.

Dated:  June 4, 2008
   New York, New York

       KIRBY MCINERNEY LLP

       By:  _____
        Peter S. Linden, Esq. (PL-8945)
        825 Third Avenue, 16th Floor
        New York, NY 10022
        Tel: (212) 371-6600
        Fax: (212) 751-2540

        *Attorneys for Plaintiffs*

Of Counsel:

Richard L. Stone, Esq.

EXHIBIT    1

KIRBY McINERNEY & SQUIRE, LLP

TELEPHONE (212) 371-6600
(212) 317-2300
FACSIMILE (212) 751-2540

*830 Third Avenue*
*New York City  10022*

**BY FACSIMILE 212-805-6717**

April 18, 2007

Hon. Richard M. Berman
U.S. District Court, S.D.N.Y.
40 Centre Street, Room 706
New York, NY  10007

**MEMO ENDORSED**
*As modified*
*See par 12; page 3*

    Re:    *Richard L. Stone et al. v. Edward T. Joyce, et al.*, CV-06-2433
           (File No. 290.03)

Dear Judge Berman:

        Enclosed please find a stipulation entered into by counsel for the parties in the referenced matter.  Among other things, the stipulation provides for the submission of the parties' dispute to a neutral JAMS arbitrator and would dismiss the action without prejudice and subject to tolling of the statute of limitations.

        Accordingly, we request that the Court So Order the attached stipulation and remove from the docket the Court conference scheduled for April 20, 2007.

        We thank Your Honor for your assistance in reaching this result.

                      Respectfully submitted,

                      Peter S. Linden  (PL - 8945)

cc:    Roger Crane, Esq. (by fax)
       Joseph Tighe, Esq. (by fax)
       Richard L. Stone, Esq. (by fax)
       Roger W. Kirby, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: **4/18/07**

KIRBY McINERNEY & SQUIRE                                    003/005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x
                                                     :
RICHARD L. STONE and                                 :
KIRBY McINERNEY & SQUIRE, LLP                         :
                                                     :
                        Plaintiffs,                  :        06 CV 2433 (RB)
                                                     :
        -against-                                    :
                                                     :
EDWARD T. JOYCE and                                  :        STIPULATION AND
EDWARD T. JOYCE & ASSOCIATES, P.C.                   :        ORDER
                                                     :
                        Defendants                   :
----------------------------------------------------x

        WHEREAS, Richard L. Stone, Kirby McInerney & Squire, LLP, Edward T.

Joyce and Edward T. Joyce & Associates, P.C. (herein "the Parties") consented to an order

entered by this Court, in proceedings on December 15, 2006, to submit their claims with

respect to the allocation of the 19 million dollar fee award (the "fee award") made by the

Honorable Julia M. Nowicki in the action entitled *Alan S. Daniel et al., v AON Corporation

et al.,* 99CH-11893 (which action was pending in the Circuit Court of Cook County,

Chancery Division, and which is now pending in the Appellate Court of Illinois, First

Judicial District) to binding arbitration before a neutral JAMS arbitrator,

        WHEREAS, the parties now wish to consent to a further order respecting the

same subject matter,

        IT IS HEREBY STIPULATED AND AGREED BY AND AMONG THE

PARTIES, that:

KIRBY SCHMERKEL & SQUIRE

1.      Within three (3) business days of entry of this stipulation and order, the parties shall submit all disputes, claims or controversies concerning the fee award to neutral binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and, unless otherwise agreed in writing by the Parties, to the JAMS Comprehensive Arbitration Rules and Procedures;

2.      The arbitration shall be administered in the JAMS offices in Atlanta, Georgia, where a file already has been opened;

3.      The JAMS Arbitrator should have class action experience and should not be based in Illinois, New York or Florida;

4.      In selecting an arbitrator each side (plaintiffs and defendants) shall have three (3) peremptory strikes, and if the Parties cannot then agree on the arbitrator, the Parties shall work out a protocol that is satisfactory to JAMS for the selection of the arbitrator;

5.      Discovery issues shall be left to the discretion of the arbitrator, except with respect to time records where the parties have agreed to provide copies of their computerized time records, with the arbitrator determining the use, if any, of such records;

6.      The Parties shall have until July 15, 2007 to complete the arbitration.

7.      No party may have *ex-parte* communication with the arbitrator and that all necessary communication with the Arbitrator shall be initiated through his or her case manager;

8.      The service of all documents shall be made by regular US mail;

9.      The arbitration shall be conducted in a major metropolitan area;

-2-

04/18/2007 15:40 FAX 212 751 2540        KIRBY McINERNEY & SQUIRE        ☒005/005

10.    Subject to the implementation of this and the prior order on consent, the

Parties shall give up any rights the Parties might possess to have their claims respecting the

allocation of the fees award litigated in a court or jury trial;

11.    The captioned action shall be dismissed without prejudice and shall be

subject to tolling of the statute of limitations from the date of the filing of the captioned

action, until the judgment respecting the arbitration is final. Edward T. Joyce and Edward

T. Joyce & Associates, P.C. shall withdraw his application in the Circuit Court of Cook

County for an order respecting allocation of the fees.

12.    THE STATUS CONFERENCE SCHEDULED BEFORE THE COURT ON
APRIL 20, 2007 IS HEREBY VACATED.

BY: _____        BY: _____
FOR:  Kirby McInerney & Squire, LLP        FOR:  Richard L. Stone
DATE:    April 17, 2007        DATE:    April 17, 2007

BY: _____        BY: _____
FOR:  Edward T. Joyce & Associates, P.C.        FOR:  Edward T. Joyce
DATE: _____        DATE: _____


SO ORDERED:

Dated: _____4/18/07_____        _____
                                        Hon. Richard M. Berman
                                        United States District Judge

-3-

04/18/07  WED 15:39  [TX/RX NO 7057]

EXHIBIT    2

### IN ARBITRATON

Richard L. Stone and )
Kirby McInerney & Squire )
    Claimants, )
  )
       v. )     Commencement Date: May 15, 2007
  )     Before JAMS, Reference No.021907B
Edward T. Joyce and )
Edward T. Joyce & Associates )
    Respondents. )

### ARBITRATOR'S FINAL AWARD

Respondents' Motion for Correction or Clarification and to Reconsider has been carefully considered along with Claimants' Memorandum in opposition and the Respondents' reply thereto.

It is the final judgment of the Arbitrator that the Contract in question is clear and unambiguous. Paragraph 3 of that Contract entitles Williamson's Counsel to 15% of the total award of the $19,000,000., plus a lodestar fee, without enhancement, for their work on the matter unrelated to preparing the Williamson case.

The rationale for this decision can be found in the June 16th, 2007 Declaration of Professor Geoffrey P. Miller, of record in these proceedings, which the Arbitrator finds to be persuasive in this dispute.

Therefore, the Motion filed by Respondents is hereby denied.

So ORDERED, this 8th day of August, 2007.

_____
Hon. G. Conley Ingram, Arbitrator

EXHIBIT    3



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD L. STONE and          )
KIRBY McINERNEY &             )
SQUIRE, LLP,                  )
                              )
        Petitioners,          )
                              )        CIVIL ACTION FILE
                              )
v.                            )        No. 1:07-cv-1936-TCB
                              )
EDWARD T. JOYCE and           )
EDWARD T. JOYCE &             )
ASSOCIATES, P.C.,             )
                              )
        Respondents.          )

## O R D E R

The issue in this case is whether to confirm an arbitrator's award in a dispute between two law firms regarding the division of attorneys' fees in a class action lawsuit.

In August 1999 Alan Daniel filed a class action against Aon Corporation in the Circuit Court of Cook County, Illinois. Daniel (along with the putative class) was represented by three law firms, including

Petitioner Kirby, McInerney & Squire, LLP. (For ease of reference, this Order will refer to the law firm and its partner Richard Stone as "KMS.")

In November 2000, some concern arose as to whether Daniel was a suitable member or representative of the class. KMS conferred with Edward T. Joyce and his law firm, Edward T. Joyce & Associates, P.C. (collectively referred to herein as "EJA"), which, together with two other law firms, represented Williamson County Agricultural Association, a potential additional class representative.

KMS and EJA agreed that EJA would provide two types of professional services in connection with the class action; EJA would (1) prosecute Williamson's claims against Aon, either as a named plaintiff who could properly represent the class or in a separate but similar class action, and (2) assist KMS in prosecuting the class-wide claims as co-class counsel.

In January 2001 Williamson was in fact added as a plaintiff in the case, and the trial judge later granted class certification. Ultimately, an $89 million settlement was obtained on behalf of the class, and $19 million in fees were awarded to class counsel.

There is no dispute as to how much of the $19 million EJA is to be awarded for its work in prosecuting Williamson's claims; the issue in this case is how much EJA is to receive for its assistance in prosecuting the class-wide claims as co-class counsel.

Did the six law firms representing the plaintiffs in the class action have the good sense to spell out, in advance and in writing, how much EJA would be paid for its work? It depends on whom you ask.

The only relevant writing is a letter dated January 4, 2001 that was executed by all six firms. For purposes of this litigation, the salient portion of the letter is paragraph 3, which reads as follows:

> In consideration for the services performed by [EJA] in connection with preparing the Williamson case, and in the event the court awards fees to plaintiffs' counsel in this action, [EJA] will receive 15% off the top of the fees awarded to plaintiffs' counsel in this action, subject to the conditions specified below. In addition, [EJA] will receive significant work in the referenced class action or a similar class action to be commenced on behalf of Williamson.

As noted above, the parties do not dispute how much EJA is to be paid for its work specifically pertaining to Williamson's part of the case. This is because the first sentence of paragraph 3 makes that compensation clear: fifteen percent off the top of the fee awarded, i.e., fifteen percent of $19 million, or $2.85 million.

3

The question is whether the second sentence of paragraph 3 sets forth the means for determining EJA's compensation for its class-wide work.

KMS contends that EJA is entitled to "a lodestar fee without enhancement," which in plain English basically means its actual number of hours worked in the case multiplied by its lawyers' hourly billing rates.

EJA wants more, contending that paragraph 3—as well as the entire letter agreement—is silent as to what its fees would be for its class-wide work. In fact, EJA argues that the letter agreement was never intended to cover EJA's compensation for its class-wide work. EJA contends that it should be compensated for its class-wide work by being allowed to participate in an equitable allocation of the $16.15 million balance of the $19 million fee award after distribution of the first fifteen percent ($2.85 million) to EJA.

In April 2007, KMS and EJA agreed to arbitrate their dispute, using Judicial Arbitration and Mediation Services ("JAMS"). On June 15, 2007, the arbitrator held a pre-hearing conference during which KMS asserted that the dispute could be resolved as a matter of law based upon the plain language of the letter agreement. EJA disputed this assertion, but the arbitrator directed KMS to file a motion for summary disposition. When

KMS filed its motion, it included the declaration of Geoffrey P. Miller, an expert in class action fee allocation, supporting KMS's interpretation of the agreement.

On July 13, 2007, the arbitrator entered a "Partial Final Award" in which he stated that "the decisive and controlling issue is whether the letter agreement . . . covers the parties' entire agreement concerning the representation of the class and allocation of attorneys' fees" in the class action. He then granted KMS's motion for summary disposition, impliedly answering the aforesaid question in the affirmative.

On August 8, 2007, after EJA filed a motion for correction or clarification and to reconsider, the arbitrator issued a "Final Award" in which he stated the following:

> It is the final judgment of the Arbitrator that the Contract in question is clear and unambiguous. Paragraph 3 of that Contract entitles [EJA] to 15% of the total award of the $19,000,000, plus a lodestar fee, without enhancement, for [EJA's] work on the matter unrelated to preparing the Williamson case.
>
> The rationale for this decision can be found in the June 16th, 2007 Declaration of Professor Geoffrey P. Miller, of record in these proceedings, which the Arbitrator finds to be persuasive in this dispute.

On August 15, 2007, KMS filed this action to confirm the arbitration award [1]. EJA has filed a motion to vacate the award [7].

On September 25, 2007, EJA filed a motion for oral argument [9], which is denied.[1]  On November 16, 2007, KMS filed a motion to strike EJA's reply brief in support of its motion to vacate the award [13].[2]

## I.    Motion to Strike

KMS has moved to strike EJA's reply brief in support of its motion to vacate the award for several reasons.  First, KMS contends that EJA's brief does not comply with Local Rule 7.1(D), which sets a fifteen-page limit for reply briefs.  However, EJA has filed a replacement brief that consists of fifteen pages, thereby mooting KMS's procedural criticism.

KMS has also moved to strike EJA's reply brief because it contains a representation of fact that is not supported by competent record evidence.  Specifically, EJA's reply brief indicates that during the initial conference with the arbitrator, counsel for EJA never asserted that the letter

---

[1] In conjunction with its petition for confirmation of the arbitration award, KMS also filed a motion for a hearing [2]. However, in its response to EJA's motion for oral argument, KMS withdrew this motion.  Therefore, KMS's motion for hearing [2] is denied as moot.

[2] KMS also makes vague allegations in its briefs that EJA should be sanctioned for challenging the arbitration award, but has not filed a motion for sanctions with the Court.  Even if the Court were to construe as a motion KMS's vague claims that sanctions should be imposed, the Court does not find that sanctions are appropriate.

agreement between the parties was ambiguous.  In support of its motion to strike, KMS submitted two affidavits from lawyers present during the initial conference who testify that they heard counsel for EJA assert that the agreement was ambiguous.

EJA did not file a counter-affidavit or any other evidence refuting the testimony of KMS's lawyers.  Instead, in support of its assertion that it did not argue that the contract was ambiguous, EJA pointed solely to its motions and briefs filed with this Court, which do not constitute evidence, and to the affidavit that Joyce had submitted with EJA's motion to vacate; that affidavit, however, does not contain any testimony regarding whether EJA's lawyers asserted at the initial conference that the contract was ambiguous.

In light of EJA's failure to rebut KMS's evidence, the Court strikes EJA's reply brief to the extent that it contains or relies upon the factual representation that during the initial conference with the arbitrator, counsel for EJA never asserted that the agreement between the parties was ambiguous.

## II.    Standard of Review

Judicial review of arbitration awards under the Federal Arbitration Act is "narrowly limited." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006). "The FAA presumes the confirmation of arbitration awards, and federal courts should defer to an arbitrator's decision whenever possible." *Id.* (internal citations omitted). "The FAA does not allow courts to roam unbridled in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specified ways." *Bryant Motors, Inc. v. Blue Bird Body Co.*, No. 5:06-cv-353-CAR, 2007 WL 1832016, at *2 (M.D. Ga. June 25, 2007) (internal quotations omitted). "Parties may not seek a second bite at the apple simply because they desire a different outcome." *Id.* (internal quotations omitted).    The "party seeking vacatur bears the burden of setting forth sufficient grounds to vacate the award." *Marshall & Co. v. Duke*, 941 F. Supp. 1207, 1210 (N.D. Ga. 1995).

There are four statutory grounds for vacating an arbitration award:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced; or

(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, courts have established three non-statutory bases for vacatur: where the award is arbitrary and capricious; enforcement of the award would be contrary to public policy; or the award was made in manifest disregard of the law. *B.L. Harbert*, 441 F.3d at 910.

EJA first argues that the award should be vacated because the arbitrator exceeded his powers by inserting a provision into the agreement that does not exist. Specifically, EJA claims that the arbitrator's determination that EJA is entitled to a lodestar without enhancement for its class-wide work does not "draw its essence from the contract" and therefore exceeds the powers granted to him by the FAA.

It is true that an arbitrator exceeds his authority when his award fails to draw its essence from the agreement he is interpreting. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

9

However, an arbitrator's award fails to draw its essence from the agreement only when it "contradicts the express language of the agreement." *Ala. Power v. Int'l Bhd. of Elec. Workers Local 345*, 130 F. Supp. 2d 1335, 1338 (S.D. Ala. 2001).; *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S 29, 38 (1987) ("The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.").[3] As long as the arbitrator "premise[d] his award on his construction of the contract,"

---

[3] EJA urges the Court to adopt a four-part test used by the Sixth Circuit in *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471 (6th Cir. 2006). There, the Sixth Circuit stated the following:

> An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with the express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.

*Id.* at 476 (quoting *Beacon Journal v. Akron Newspaper Guild*, 114 F.3d 596, 600 (6th Cir. 1997)). The Court is not inclined to follow the Sixth Circuit's approach given the significant number of cases in the Eleventh Circuit that have limited the scope-of-authority inquiry to when an arbitrator's award "contradicts the express terms of the agreement." *See, e.g., Ala. Power*, 130 F. Supp. 2d at 1338; *Local Union No. 1961, Int'l Bhd. Of Painters & Allied Trades, AFL-CIO v. Sherwin Williams*, No. 1:90-cv-1856-ODE, 1991 WL 497337 (N.D. Ga. Aug. 30, 1991). As a result, the Sixth Circuit cases on which EJA relies, including *International Ass'n of Machinists v. Lourdes Hospital, Inc.*, 958 F.2d 154 (6th Cir. 1992), and *Beacon Journal*, which apply the four-part standard laid out above, are inapposite. Moreover, even if *Solvay* were binding precedent, the result in this case would be the same.

this Court must confirm it. *United Steelworkers*, 363 U.S. at 598; *see also Misco*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

Paragraph 3 of the agreement provides in relevant part that "[i]n addition, [EJA] will receive significant work in the referenced class action or a similar class action to be commenced on behalf of Williamson." At first blush, this clause appears to be silent with regard to the compensation to which EJA is entitled for its class-wide work. The question, then, is whether the arbitrator was at least arguably construing the agreement or whether his interpretation directly contradicts its express terms.

After a review of the agreement's terms and the statements the arbitrator made in his Partial Final Award and Final Award, the Court is persuaded that his award was based upon a permissible construction of the agreement. In his Partial Final Award, the arbitrator expressly found that the letter agreement was integrated and therefore that it "cover[ed] the parties' entire agreement concerning representation of the class and allocation of attorneys' fees." Based on this finding, he then found that

paragraph 3 entitled EJA to a lodestar without enhancement. Although the arbitrator's decision is not necessarily the decision this Court would have made, it does not "contradict[] the express language of the agreement," *Ala. Power*, 130 F. Supp. 2d at 1338, but rather at most represents a "misread[ing]" of the agreement, which is not grounds for vacatur, *Misco*, 484 U.S. at 38.

EJA next contends that the arbitrator's award should be vacated because it is arbitrary and capricious. Specifically, EJA claims that the fact that paragraph 3 is silent with respect to the compensation EJA will receive for the "significant work" contemplated by the agreement means that there are no grounds for the arbitrator's decision. This contention is merely a repackaging of EJA's argument that the award does not draw its essence from the contract, and the Court therefore rejects it.

EJA also contends that it was arbitrary and capricious for the arbitrator to explicitly rely on the declaration of KMS's expert, Geoffrey P. Miller, when he had already determined that the agreement was clear and unambiguous. This contention has no merit.

It is true that an arbitrator cannot rely on parol evidence once he has determined that a contract is clear and unambiguous. *See, e.g., Excel Corp.*

*v. United Food & Commercial Workers*, 102 F.3d 1464, 1468 (8th Cir. 1996) ("When the language of the contract is clear and unambiguous . . . the arbitrator may not rely on parole [sic] evidence."). However, a close reading of the Final Award convinces the Court that the arbitrator relied on Miller's declaration for his determination that the contract was clear and unambiguous, which *is* permissible.[4] *See Sunstream Jet Express, Inc. v. Int'l Air Serv. Co.*, 734 F.2d 1258, 1268 (7th Cir. 1984) ("In determining the issue of ambiguity, as a matter of law, the trial court may consider parol and extrinsic evidence."). The arbitrator's award is brief; after reciting that he had considered the parties' submissions, the arbitrator found that the letter agreement was "clear and unambiguous" and that the rationale for that finding could be found in Miller's declaration. Therefore, it appears that in actuality he only relied on Miller's declaration for the permissible purpose of "determining the issue of ambiguity." *See Sunstream*, 734 F.2d at 1268. Consequently, the award was not arbitrary and capricious and need not be vacated for that reason.

---

[4] Notably, however, even had the arbitrator improperly relied on parol evidence in the face of an unambiguous contract, it would not necessarily be grounds for vacatur. *See Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 781 (11th Cir. 1993) ("For an arbitration award to be vacated as arbitrary and capricious, the . . . award must contain more than an error of law or interpretation. Rather, there must be no ground for the [arbitrator's] decision.") (internal citations omitted).

EJA next contends that the arbitrator's award was made in manifest disregard of the law and therefore should be vacated. Specifically, EJA claims that the arbitrator's reliance on Miller's declaration in the face of an unambiguous contract constitutes manifest disregard of the law. However, the Court having just determined that the arbitrator actually relied on Miller's declaration for the purpose of determining whether the contract was ambiguous, which reliance was not improper, no manifest disregard of the law has been shown, and the award cannot be vacated for this reason.[5]

---

[5] Once again, even if the arbitrator had relied on Miller's declaration for an improper purpose, it would not constitute manifest disregard of the law. The standard governing this cause for vacatur is extremely high and requires a respondent to prove that the arbitrator was "conscious of the law and deliberately ignore[d] it." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000) (quoting *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1461 (11th Cir. 1997)). Specifically, to establish manifest disregard for the law, a respondent must prove the following:

(1)    the lawyer for the winning party in arbitration told the arbitrators his position was contrary to the law and urged the panel not to follow the law;

(2)    the blatant appeal to disregard the law was explicitly noted in the award;

(3)    nothing in the record suggested the panel disapproved or rejected the suggestion that it rule contrary to the law; and

(4)    the evidence to support the award was marginal.

*SII Invs., Inc. v. Jenks*, No. 05-2148, 2006 WL 2092639, at *4 (M.D. Fla. July 27, 2006) (citing *B.L. Harbert*, 441 F.3d at 911). Nothing even close to this has occurred in this case.

Finally, EJA contends that the arbitrator committed misconduct by refusing to grant a hearing at which EJA could present evidence in rebuttal to Miller's declaration.[6]  Specifically, EJA claims that if the arbitrator intended to consider Miller's declaration then EJA was entitled to an evidentiary hearing under JAMS Rule 22.

JAMS Rule 22 outlines the procedures that normally apply to an arbitration hearing.  However, nowhere in Rule 22 or in any other JAMS rule does it appear that an arbitrator must hold a hearing if evidence will be considered.  In fact, even if the arbitrator had held a hearing, he would not have been required by the JAMS Rules to permit EJA to cross-examine Miller.  JAMS Rule 22(e) provides that "[t]he Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate."

Based on the language of the JAMS Rules—which the parties agreed would apply to their arbitration—EJA has failed to show that any arbitral

---

[6] EJA also contends that the arbitrator exceeded his powers by considering Miller's declaration.  Specifically, EJA argues that because the parties agreed to be bound by the JAMS Rules, and because the arbitrator's consideration of Miller's declaration allegedly violated those rules, he exceeded his authority by relying on the declaration.  This argument is inextricably intertwined with EJA's argument that the arbitrator's consideration of Miller's declaration constituted misconduct under the JAMS Rules, and the Court will not address it separately.

misconduct has occurred. *See Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994) (refusing to hold that misconduct had occurred where the arbitrator's and parties' conduct were "within the broad procedural rules of arbitration agreed to" by the parties).

Accordingly, because no grounds for vacatur exist under the deferential standard of review this Court must apply to the arbitrator's award, KMS's petition for confirmation is due to be granted and EJA's motion to vacate the arbitration award is due to be denied.[7] EJA has no one but itself to blame for this result. It is a sophisticated law practice, experienced in class action litigation, and it had the opportunity to ensure that the letter agreement explicitly provided a precise method for computing its fees for its class-wide work. Thus, the arbitrator's failure to adopt EJA's position is as much attributable to EJA as to the arbitrator.

## III. Conclusion

For the foregoing reasons, the Court GRANTS Petitioners' petition for confirmation [1], DENIES Respondents' motion to vacate the arbitration award [7], DENIES as moot Petitioners' motion for hearing [2], DENIES

---

[7] EJA contends that the proposed final judgment KMS filed in conjunction with its petition for confirmation exceeds the scope of the arbitration award because it specifies the dollar amount of the lodestar to which EJA is entitled if the award is confirmed. The Court agrees and limits the scope of the judgment to be entered in favor of KMS to the express terms of the arbitration award.

Respondents' motion for oral argument [9], and GRANTS in part and DENIES as moot in part Petitioners' motion to strike Respondents' reply brief in support of their motion to vacate the award [13]. The Clerk is DIRECTED to enter JUDGMENT in favor of Petitioners and against Respondents and CONFIRM the arbitrator's award as follows: "[T]he Contract entitles [Edward T. Joyce and Edward T. Joyce & Associates, P.C.] to 15% of the total award of $19,000,000, plus a lodestar fee, without enhancement, for their work on the matter unrelated to preparing the Williamson case."

IT IS SO ORDERED this 31st day of March, 2008.

Timothy C. Batten, Sr.
United States District Judge

EXHIBIT    4

IN ARBITRATON

| | |
|---|---|
| Richard L. Stone and | ) |
| Kirby McInerney & Squire | ) |
|     Claimant(s). | ) |
| | ) |
|       v. | )    Commencement Date: May 15, 2007 |
| | )    Before JAMS, Reference No.021907B |
| Edward T. Joyce and | ) |
| Edward T. Joyce & Associates | ) |
|     Respondent(s). | ) |

### PARTIAL FINAL AWARD

There are a number of issues discussed in the excellent briefs submitted on behalf of the parties in this case. However, the decisive and controlling issue is whether the letter agreement dated December 28, 2000 covers the parties' entire agreement concerning representation of the class and allocation of attorneys' fees in the Daniel v. Aon, et al., No. 99-CH 11893 Class Action Litigation. Claimants argue that it does while Respondents argue it does not.

In Georgia the interpretation of contracts is a three-step process.

> "Initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury or other factfinder. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA, paragraph 13-2-2.

(Punctuation and citations omitted.) Skylake Property Owners Assn. v. Powell, 281 Ga. App. 715, 716 (1) (637 SE 2d 51) (2006)." Godley Park Homeowners Assoc., Inc., v. Bowen, - Ct of Aps of GA- A07A0530 (06/20/07).

After reviewing the letter agreement in its entirety and considering the submissions of all Counsel in this case, it is the decision of the undersigned Arbitrator that Claimants' Motion for Disposition on the Contract should be, and it hereby is, granted in this Arbitration. New York and Illinois law lead to this same conclusion in construing this letter agreement between Counsel in this case.

So ORDERED, this 13th day of July, 2007.

_____
Arbitrator