**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

|  |  |
|---|---|
| RICHARD L. STONE and KIRBY McINERNEY, LLP | : **08-CV-5171 - RPP** |
| Plaintiffs, | : |
| -against- | : **NOTICE OF FILING** |
| JOHN RANDY PATCHETT and PATCHETT LAW OFFICE, | : |
| Defendants | : |

---------------------------------------------------------- :

.

PLEASE TAKE NOTICE THAT in response to the motion to dismiss filed by Edward T. Joyce and Edward T. Joyce & Associates, P.C. (collectively, the "Joyce Defendants"), and the motion to dismiss or transfer filed by John Randy Patchett and the Patchett Law Office (collectively, the "Patchett Defendants"), plaintiffs have filed today the attached Amended Complaint with the Clerk of the Court.

Dated: August 21, 2008
       New York, New York

                                    Respectfully submitted,

                                    /s/_____
                                    Peter S. Linden
                                    Richard L. Stone
                                    KIRBY McINERNEY LLP
                                    825 Third Avenue, 16th Floor
                                    New York, NY 10022
                                    (212) 371-6600
                                    plinden@kmllp.com

                                    *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD L. STONE and KIRBY McINERNEY LLP,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN RANDY PATCHETT and PATCHETT LAW OFFICE,<br><br>Defendants. | Case No. 1:08-cv-05171- RPP<br><br>**FIRST AMENDED COMPLAINT**<br><br>Judge Robert P. Patterson, Jr. |

Plaintiffs allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## I. JURISDICTION

1.    This court has subject matter jurisdiction over plaintiffs' claims pursuant to the principles of diversity jurisdiction set forth at 28 U.S.C. §1332. This court has original jurisdiction of this civil action in that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is exclusively between citizens of different states.

2.    Plaintiff Kirby McInerney LLP is a citizen of the State of New York and plaintiff Richard Stone is a citizen of the State of Florida (collectively, "Kirby"). John Randy Patchett and Patchett Law Offices (collectively "Patchett") are citizens of the State of Illinois.

3.    This court has personal jurisdiction over defendants.   As shown herein, Patchett has in person and through agents both transacted business within New York and supplied services in New York.   The Contract concerning the allocation of legal fees, which plaintiffs seek to enforce as against Patchett through this action, was negotiated, documented, entered into and largely performed in New York.   The claims asserted herein arise out of business transacted in this state pursuant to the subject Contract.

4.    Patchett has acknowledged that he worked primarily with one other law firm and its principal pursuant to the Contract.   This law firm is Edward T. Joyce & Associates, P.C. and its principal is Edward T. Joyce (collectively, "Joyce").   In fact, Patchett and Joyce acted as joint venturers, in connection with providing services to their client Williamson County Agricultural Association pursuant to the subject Contract.   Joyce, who is a joint venturer with Patchett, has previously consented to and been subject to the personal jurisdiction of this court in a related matter.   Edward T. Joyce traveled to New York and met with lawyers from Kirby in connection with the Aon matter on several occasions.   Moreover, both Joyce and Patchett sent their executed signature pages for the Contract to New York and telephoned, faxed and/or emailed documents to Kirby in New York on a regular basis.   Moreover, Patchett is seeking to enforce the Contract prepared,

drafted and executed in New York as against a New York resident, Kirby, and thus has subjected himself to the jurisdiction of New York courts.

## II. VENUE IS PROPER IN THIS DISTRICT PURSUANT TO 28 U.S.C. §1391

5.    A substantial part of the events or omissions giving rise to the claim occurred in this judicial district; the Contract was entered into in New York City, largely performed in New York City, breached by Patchett in New York City, and Patchett seeks payment pursuant to the Contract from a New York payor, Kirby. Therefore, all injuries resulting from Patchett's actions occurred in and had consequence in this county.

## III. THE PARTIES AND OTHER RELATED PERSONS

6.    Plaintiff Kirby McInerney LLP (formerly known as Kirby McInerney & Squire LLP and referred to hereinafter as "Kirby McInerney") is a law firm located in the county and city of New York.

7.    Plaintiff Richard L. Stone is an attorney and Of Counsel to Kirby McInerney. Stone is a citizen of Florida.

8.    Edward T. Joyce & Associates, P.C., a non-party, is a law firm located in Chicago, Illinois. Edward T. Joyce & Associates was a party to the fee

Contract pursuant to which the subject Aon litigation was litigated and pursuant to which fees were to be allocated.

9.      Edward T. Joyce, a non-party, is a principal of non-party Edward T. Joyce & Associates, P.C.  Edward T. Joyce is a citizen of Illinois.  Edward T. Joyce & Associates, P.C., and Edward T. Joyce individually are referred to collectively herein as "Joyce".

10.     Defendant Patchett Law Office is a law firm located in Marion, Illinois.

11.     Defendant John Randy Patchett is the principal of the defendant Patchett Law Office.  Patchett is a citizen of Illinois.  Patchett and his law firm are collectively referred to herein "Patchett".

## BACKGROUND AND FACTUAL ALLEGATIONS

12.     On August 19, 1999, plaintiffs as class counsel commenced a class action captioned *Daniel v. Aon, et al.*, No. 99-CH-11893, in the Circuit Court of Cook County, Illinois, against Aon Corporation and its subsidiaries concerning undisclosed contingent commissions paid to Aon as insurance broker (the "Aon Action").  Plaintiffs have throughout the action represented class representative Alan Daniel, and are the only court appointed lead counsel to the Aon class.

13.    On December 28, 2000, in the County of New York, State of New York, defendants and plaintiffs, as well as certain other parties, entered into a written agreement (the "Contract") to add Williamson County Agricultural Association ("Williamson") as additional class representative. (A copy of the Contract is annexed as Exhibit 1.) Williamson was the client of Patchett, Joyce, and a third firm, Illinois-based Freed & Weiss LLC, and it's principal, Paul Weiss. The Contract was executed by Patchett on or about January 5, 2001. Parties who executed the Contract outside of New York faxed their executed copies to Kirby McInerney in New York. The Contract was negotiated in and from New York with Peter Linden of Kirby McInerney taking comments from parties and incorporating them in a final draft which was eventually agreed upon and executed.

14.    Edward T. Joyce was actively involved on behalf of himself and his firm, Edward T. Joyce & Associates, P.C., and on behalf of the other counsel who represented his client Williamson (including Patchett), in negotiating changes to the draft contract. Joyce called Peter S. Linden with comments in New York, and also faxed comments to Linden in New York. Certain of these comments were incorporated in the final draft of the Contract.

15.    The Contract provided that defendants were to be retained by plaintiff Kirby McInerney as additional counsel in the then pre-existing class action - the *Aon* action. The Contract specifically provided that Kirby McInerney from New York would act as sole lead counsel and be responsible for the management and prosecution of the action including making work assignments, conducting discovery, preparing for trial, and initiating and directing settlement discussions.

16.    Patchett's role as set forth in the Contract was "assisting [Kirby McInerney]" in the prosecution of the action.    In fact, Patchett and Joyce in representing their client Williamson assisted Kirby by completing assignments given to them by Kirby.  This work required regular phone calls and faxes to Kirby McInerney's office in New York, New York over the course of many years during the litigation.

17.    The Contract specifically provided that in the event that certain specified circumstances were realized, and defendants otherwise complied with the Contract, the defendants would be paid by Kirby part of the fees awarded to counsel in the Aon action for work they performed at Kirby McInerney's direction.  The Contract made clear that defendants' fee will be paid based upon the success of Kirby's work in New York in achieving class certification and a settlement.

6

18.    On July 28, 2004, the Illinois Circuit Court appointed Kirby McInerney as sole lead counsel for the class and certified the class on that date.

19.    At no time did Patchett seek to be appointed as counsel to the class. Nor was Patchett ever appointed by the Circuit Court as counsel to the class.

20.    On or about March 9, 2005, the plaintiffs in the *Aon* action entered into a settlement agreement with defendants. This Settlement Agreement was executed only by Kirby and Law Offices of Edward T. Joyce as Class Counsel. The Settlement Agreement defines Class Counsel as including Kirby McInerney, Law Offices of Edward T. Joyce, and two other non-party law firms. Patchett is not listed as Class Counsel in the Settlement Agreement. The Settlement Agreement, later approved by the Circuit Court Judge, Julia Nowicki, provides that only parties who are Class Counsel may be paid fees pursuant to the settlement (*See* ¶ 21, and Section VIII (pp. 22-23) of Settlement Agreement (annexed hereto as Exhibit 2)). Because Patchett neither sought appointment nor was appointed as Class Counsel, he may not seek fees pursuant to the Settlement Agreement. At no time did Patchett appeal nor seek to appeal the Settlement Agreement in any respect.

21.    During the case, Joyce and Patchett acted as co-counsel representing their client Williamson as joint venturers with each other pursuant to the Contract.

7

18.    On July 28, 2004, the Illinois Circuit Court appointed Kirby McInerney as sole lead counsel for the class and certified the class on that date.

19.    At no time did Patchett seek to be appointed as counsel to the class. Nor was Patchett ever appointed by the Circuit Court as counsel to the class.

20.    On or about March 9, 2005, the plaintiffs in the *Aon* action entered into a settlement agreement with defendants. This Settlement Agreement was executed only by Kirby and Law Offices of Edward T. Joyce as Class Counsel. The Settlement Agreement defines Class Counsel as including Kirby McInerney, Law Offices of Edward T. Joyce, and two other non-party law firms. Patchett is not listed as Class Counsel in the Settlement Agreement. The Settlement Agreement, later approved by the Circuit Court Judge, Julia Nowicki, provides that only parties who are Class Counsel may be paid fees pursuant to the settlement (*See* ¶ 21, and Section VIII (pp. 22-23) of Settlement Agreement (annexed hereto as Exhibit 2)). Because Patchett neither sought appointment nor was appointed as Class Counsel, he may not seek fees pursuant to the Settlement Agreement. At no time did Patchett appeal nor seek to appeal the Settlement Agreement in any respect.

21.    During the case, Joyce and Patchett acted as co-counsel representing their client Williamson as joint venturers with each other pursuant to the Contract.

7

Joyce traveled to New York to meet with Kirby lawyers in connection with representation of Williamson and the class. He also sent to Kirby's office numerous faxes and made numerous phone calls to Peter Linden in his office in New York. On a regular basis, Joyce faxed to Kirby's office in New York comments on scores of documents drafted by Kirby, and sent other miscellaneous faxes to the Kirby office. Patchett also called to Kirby's office during his representation of Williamson and sent faxes and emails including comments on documents to Kirby's office. Patchett also sent a summary of his lodestar (time multiplied by hourly rate) to Kirby's office for review. In sum, Joyce and his co-venturer Patchett conducted their role in the case under the supervision of Kirby, and therefore, their work product was reviewed and commented upon by Kirby either by physical review of documents sent by federal express or documents sent by fax or email.

22.    Joyce and Patchett's representation of their client necessitated frequent and regular communication with Kirby in New York concerning issues relevant to the prosecution of the case.

23.    The case was principally litigated from New York where Kirby prepared documents for filing by Joyce and/or other local counsel. All strategic decisions and all document review took place in New York. Joyce's office and

8

Patchett's office were not sent a copy of the discovery documents provided by Aon in connection with the action. This discovery was reviewed solely in New York.

24.    On or about March 30, 2006, the Illinois Circuit Court entered an order approving the settlement agreement entered into in the *Aon* action, providing approximately $87.0 million in benefits and relief for the class and awarded the Class Counsel attorneys' fees and expenses in the amount of $19.0 million (the "Fee Award"). The Fee Award as well as the Court's approval of the Settlement were affirmed by the Illinois Appellate Court, but one of the appellants has petitioned for rehearing. Accordingly, the Fee Award and the approval of the Settlement are currently on appeal, and thus, the Circuit Court in Illinois pursuant to Illinois procedural rules no longer has jurisdiction over the *Aon* matter.

25.    Pursuant to the Contract (assuming that Joyce and Patchett and their other co-counsel representing Williamson met the specified conditions), Williamson's counsel were to receive 15% of the $19.0 fee million award, plus their lodestar in the case for their work on the Aon action unrelated to preparing the Williamson case. This money was to be paid pursuant to the Contract by Kirby to Joyce and Patchett and another joint venturer, attorney Paul Weiss and his firm, Freed & Weiss LLC. Payment pursuant to the Contract was to be made

9

in and from New York. Indeed, because Patchett was not Class Counsel he has no claim to fees pursuant to the Settlement Agreement only pursuant to the Contract.

## THE FEE DISPUTE & FEE ARBITRATION

26.     Soon after the court awarded fees to Class Counsel pursuant to the Settlement Agreement Patchett (defendants here) and Joyce made clear that they would not abide by the fee allocation set forth in the Contract. Each of them sought to obtain a greater fee allocation through filing a pleading in the Circuit Court of Illinois requesting that the court award them more than they had contracted for pursuant to the Contract. In order to enforce the Contract, Kirby, the court appointed lead counsel in the *Aon* action, sued Joyce in the U.S. District Court for the Southern District of New York in order to enforce the contract (Case No. 06-CV-2433 (RB)).

27.     At all times, Patchett had notice of all of the proceedings concerning the fee dispute as at issue in this matter. Moreover, he participated in mediation with respect to the fee dispute and it has been acknowledged in a letter to this court that he principally worked with Joyce in this matter and that "the Patchett firm has aligned itself with the Joyce firm's position regarding allocation". (*See* Exhibit 3 at p. 2).

28.    Following proceedings before this court seeking to enforce the Contract (Case No. 06-CV-2433 (RB)), plaintiffs and Joyce entered into a stipulation and order agreeing to binding arbitration in front of the JAMS dispute resolution entity.    Judge Richard M. Berman executed and so ordered the stipulation on April 18, 2007.    Through these proceedings, Joyce subjected himself to the personal jurisdiction of this Court.

29.    The arbitration proceeded before a JAMS arbitrator in Georgia who was jointly selected by the parties to the arbitration.    A preliminary hearing was held on June 11, 2007.    Plaintiffs and Joyce fully and thoroughly litigated the issues surrounding the interpretation of the Contract and counsel's compensation in the *Aon* action.    The parties filed extensive briefs concerning the interpretation of the Contract in front of the arbitrator, the Honorable M. Conley Ingram (a former Justice of the Georgia Supreme Court).

30.    After more than 100 pages of briefing, Judge Ingram rendered a "partial final award" and granted Kirby's motion for disposition on the contract finding that Joyce, Patchett and another local counsel, Paul Weiss, were entitled to 15% of the total award of the $19.0 million plus a fee equal to their lodestar, less the portion of their lodestar which related to preparing Williamson's case.

11

28.    Following proceedings before this court seeking to enforce the Contract (Case No. 06-CV-2433 (RB)), plaintiffs and Joyce entered into a stipulation and order agreeing to binding arbitration in front of the JAMS dispute resolution entity.    Judge Richard M. Berman executed and so ordered the stipulation on April 18, 2007.    Through these proceedings, Joyce subjected himself to the personal jurisdiction of this Court.

29.    The arbitration proceeded before a JAMS arbitrator in Georgia who was jointly selected by the parties to the arbitration.    A preliminary hearing was held on June 11, 2007.    Plaintiffs and Joyce fully and thoroughly litigated the issues surrounding the interpretation of the Contract and counsel's compensation in the *Aon* action.    The parties filed extensive briefs concerning the interpretation of the Contract in front of the arbitrator, the Honorable M. Conley Ingram (a former Justice of the Georgia Supreme Court).

30.    After more than 100 pages of briefing, Judge Ingram rendered a "partial final award" and granted Kirby's motion for disposition on the contract finding that Joyce, Patchett and another local counsel, Paul Weiss, were entitled to 15% of the total award of the $19.0 million plus a fee equal to their lodestar, less the portion of their lodestar which related to preparing Williamson's case.

11

31.    The arbitrator's decision resolved the entire fee allocation issue because it provided that the Joyce group consisting of Joyce, Patchett and their other co-counsel, Weiss, in Illinois would receive exactly 15%, plus the portion of their lodestar not attributable to working on Williamson.

32.    Throughout the arbitration, Joyce's interests were fully aligned with those of Patchett.  Joyce's claim under the contract was the same as Patchett's claim thereunder.  Joyce zealously represented his and Patchett's interest in the arbitration, including filing a fully briefed motion for reconsideration in front of the arbitrator and then an appeal to the District Court as well as a subsequent appeal to the 11th Circuit Court of Appeal.  Joyce's aggressive, thorough representation of his position amounted to aggressive representation of Patchett's position in the arbitration.  Patchett knew of the arbitration but chose not to participate. Moreover, as Joyce frankly acknowledged to this court, the Patchett firm "aligned itself" with Joyce's firm's position regarding fee allocation (See Exhibit 3 [November 8, 2006 letter to Judge Berman]).  This statement was made by Joyce's counsel to this court on November 8, 2006 before the arbitration even commenced.

33.    On August 15, 2007, after the arbitrator's award became final, plaintiffs moved the United States District Court for the Northern District of

12

Georgia for an order confirming the arbitrator's order as required by the Federal Arbitration Act. In two separate briefs, defendant Joyce moved to vacate the arbitrator's award and opposed plaintiff's petition for confirmation of that award. Plaintiff opposed all of Joyce's arguments. The matter was fully and exhaustively briefed and deemed submitted on December 5, 2007.

34.    On March 31, 2008, United States District Court Judge Timothy C. Batten, Sr. confirmed the arbitrator's award.

35.    In total, plaintiffs filed seven briefs plus appellate briefs in support of their interpretation of the contract and defendant Joyce and his firm filed seven briefs plus appellate briefs supporting their point of view.

36.    On May 1, 2008, defendant Joyce filed a notice of appeal to the U.S. Court of Appeals for the Eleventh Circuit. This appeal, including a sanctions motion filed against Joyce, have now been fully briefed.

37.    On August 21, 2008, Joyce filed a motion in the U.S. Court of Appeals for the Eleventh Circuit voluntarily dismissing with prejudice Joyce's appeal of the arbitrator's award.

38.    Because Joyce zealously represented his interests and those of Patchett, and because there is privity between defendant Patchett and Joyce in that they represented the same client pursuant to the same fee Contract, seeking the

13

same fee pursuant to the Contract, Joyce's representation amounts to virtual representation of Patchett. Accordingly, under binding case law, Patchett is collaterally estopped from further re-litigation of the issue of the fee allocation pursuant to the Contract. *See Pharr v. Evergreen Garden, Inc.*, 123 Fed. Appx. 420, 424-25 (2nd Cir. 2005).

## FIRST COUNT
## BREACH OF CONTRACT

39.    Plaintiffs repeat and reallege each of the foregoing allegations.

40.    Plaintiffs have fully and completely fulfilled their responsibilities under the Contract and have tendered to defendants from New York the full and complete consideration due and owing pursuant to the Contract in an amount far in excess of $75,000. Defendants have rejected their tender, and have demanded compensation substantially in excess of that which defendants agreed to accept pursuant to the Contract.

41.    Accordingly, defendants have made clear that they will not abide by the contract. Defendants thus have breached and repudiated the Contract.

42.    By reason of defendants' breach of contract, plaintiffs have sustained damages in a sum in excess of $75,000, which amount will be determined at trial,

14

together with interest on such amount.    Plaintiffs also seek a declaratory judgement that defendants be bound by the Contract.

## SECOND COUNT
## DECLARATORY RELIEF

43.    Plaintiffs repeat and reallege each of the foregoing allegations.

44.    Defendants Patchett and Patchett Law Office and Joyce co-represented plaintiff Williamson in the *Aon* action.  At all times the Patchett defendants shared a common interest with defendant Joyce in connection with prosecuting the proceeding and in all proceedings relating to the fee allocation.  It has been acknowledged in court filings that Patchett aligned himself with Joyce's firm's position regarding allocation of legal fees in the Aon matter.  Patchett had the same contractual claim as did Joyce for fees pursuant to the Contract.

45.    Throughout the proceedings, Joyce has vigorously represented his own interest under the Contract, as well as the same interests of Patchett.  Under applicable law, defendants are and were in privity with Joyce with respect to the fee allocation; their interests are entirely aligned with those of Joyce.

46.    During the Aon litigation, defendant Joyce spoke as a representative of Williamson's counsel on behalf of all of Williamson's counsel including Patchett.  He has held himself out as speaking on behalf of Patchett in connection

15

with the litigation and the mediation.  Defendant thoroughly and aggressively litigated the fee dispute through arbitration and appeals and represented Patchett's interests well in connection therewith.

47.    There is a complete identity of issues that was necessarily decided by the JAMS arbitrator and confirmed in the district court decision that is decisive of Patchett's fee allocation pursuant to the Contract.  These arbitration rulings and the affirmance by the district court provided Patchett through his virtual representation by Joyce with the full and fair opportunity to litigate all fee issues.

48.    The arbitrator's judgment on the merits concerning the fee allocation and the district court's confirmation order are conclusive on the issues of fact and questions of law necessarily decided therein.  Accordingly, the doctrine of collateral estoppel bars any further litigation on the matter and binds defendants Patchett and the Patchett Law Office to the arbitration proceeding outcome. Therefore, plaintiffs are entitled to a declaratory judgment finding that Patchett is collaterally estopped from challenging the arbitration judgment.

49.    In equity, Patchett whose lodestar in this case represents less than 3.5% of the total lodestar of all counsel and who has described himself as a "small cog in the wheel" should not be permitted to relitigate the issues decided through

the exhaustive and comprehensive two year arbitration and appeals process that was conducted wherein these issues were fully resolved.

50.    As shown in ¶ 21 and Section VIII hereof, Patchett never sought and was never appointed as class counsel pursuant to the Settlement Agreement. Therefore, he is entitled to no legal fee under the Settlement Agreement. Patchett has neither appealed nor sought to appeal the Settlement Agreement or the court's order approving the Settlement Agreement.  Therefore, this Court should issue a declaratory judgment holding that Patchett may not seek any fee pursuant to the Settlement Agreement.

51.    Plaintiffs are entitled to a declaratory judgment that Patchett has no claim for legal fees pursuant to the Settlement Agreement.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray:

a.        for damages relating to Patchett's anticipatory breach of the contract;

b.        for a declaratory judgment that Patchett is collaterally estopped from challenging the arbitrator's allocation of fees under the Contract;

c.        for declaratory judgment that Patchett is not entitled to any fees pursuant to the Settlement Agreement because he was not a Class Counsel; and

d.          for such other relief as this court may deem, equitable and

proper, including the cost of this action.

Plaintiffs request a trial by jury.

Dated:  New York, New York
        August 21, 2008

                            **KIRBY McINERNEY LLP**


                    By:  /s/ _____
                            Peter S. Linden
                            Richard L. Stone
                            825 Third Avenue, 16th Floor
                            New York, NY  10022
                            Tel: (212) 371-6600
                            Fax: (212) 751-2540

                            *Attorneys for Plaintiffs*

18

# EXHIBIT 1

# KIRBY McINERNEY & SQUIRE, LLP

TELEPHONE (212) 371-6600
(212) 317-2300
FACSIMILE (212) 751-2540

*830 Third Avenue*
*New York City 10022*

———

IRVING MALCHMAN, OF COUNSEL

<u>**VIA FACSIMILE & U.S. MAIL**</u>

December 28, 2000

Edward T. Joyce, Esq.
Edward T. Joyce & Associates
11 S. LaSalle Street, Suite 1600
Chicago, IL 60603

Paul M. Weiss, Esq.
Freed & Weiss, LLC
111 W. Washington Street
Suite 1331
Chicago, IL 60602

John G. Jacobs, Esq.
The Jacobs Law Firm, Chtd.
122 S. Michigan Avenue
Suite 1850
Chicago, Illinois 60603

Randy Patchett, Esq.
The Patchett Law Firm
104 West Calvert
P.O. Box 1176
Marion, IL 62959

Ronald L. Futterman, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603



RECEIVED
JAN 0 4 2001
THE JACOBS LAW FIRM, CHTD.

Re:   <u>*Daniel v. Aon. et al.*. No. 99-CH 11893; Aon Class Action Litigation</u>

Dear Counsel:

This will confirm the agreement among Kirby McInerney & Squire, LLP ("KMS"), Edward T. Joyce & Associates, P.C. ("Joyce"), Freed & Weiss, LLC ("F&W"), The Patchett Law Office ("Patchett"), Futterman & Howard, Chtd. ("Futterman") and The Jacobs Law Firm, Chtd. ("Jacobs") concerning the prosecution of a class action involving the practice by which Aon Corporation and/or its subsidiaries (collectively "Aon") accept fees, profit sharing or other benefits from insurers in connection with the placement of commercial insurance for Aon's customers.

1.     Joyce, F&W and Patchett have referred their client, Williamson County Agricultural Association ( "Williamson"), to KMS, for inclusion as a plaintiff in the pending class action styled *Daniel v. Aon Corporation, et al.*, referenced above, or for the commencement of a similar class action on Williamson's behalf.

KIRBY MCINERNEY & SQUIRE, LLP

Edward T. Joyce, Esq.
Randy Patchett, Esq.
Paul M. Weiss, Esq.
December 28, 2000
Page 2

    2.    Joyce, F&W and Patchett ("Williamson's Counsel") represent that Williamson is a member of the class described in the *Daniel* action.

    3.    In consideration for the services performed by Williamson's Counsel in connection with preparing the Williamson case, and in the event the court awards fees to plaintiffs' counsel in this action, Williamson's Counsel collectively will receive 15% off the top of the fees awarded to plaintiffs' counsel in this action, subject to the conditions specified below. In addition, Williamson's Counsel collectively will receive significant work in the referenced class action or a similar class action to be commenced on behalf of Williamson.

    4.    KMS will act as lead counsel and will be responsible for managing the prosecution of this action, making work assignments in this action, for determining strategic decisions in the litigation of this action, conducting discovery, preparing for trial, and for initiating and directing settlement discussions with counsel for defendants.

    5.    Joyce, F&W, Patchett, Futterman and Jacobs will act as members of, and constitute, an Executive Committee. The Executive Committee shall be responsible for assisting KMS in the prosecution of this action.

    6.    This agreement is contingent upon our actually commencing a class action claim on behalf of Williamson in state or federal court in Illinois, and Williamson being finally and successfully certified as a class representative. In the event Williamson ultimately is not certified as a class representative, but the action nevertheless achieves a successful outcome, Joyce, F&W and Patchett may apply at the conclusion of the action for reimbursement of attorneys' fees and expenses actually incurred. Counsel for plaintiff Daniel will support such application.

    7.    Williamson's Counsel agree not to commence or participate financially in any lawsuit involving the same or similar claims against any defendant without the prior written consent of the other signatories of this agreement.

    8.    Williamson's counsel represent that Williamson has agreed to the terms hereof.

KIRBY MCINERNEY & SQUIRE, LLP

Edward T. Joyce, Esq.
Randy Patchett, Esq.
Paul M. Weiss, Esq.
December 28, 2000
Page 3

If the foregoing accurately reflects our arrangement, please execute this agreement on behalf of your firm by signing where indicated below and return the executed copy to us. If there is any question, please call us. We look forward to working with you in this matter.

Sincerely,

Peter S. Linden
Kirby McInerney & Squire, LLP

cc:    Richard L. Stone, Esq.

ACCEPTED AND AGREED TO:

EDWARD T. JOYCE & ASSOCIATES, P.C.

By:    _____
                Edward T. Joyce

FREED & WEISS, LLC

By:    _____
                Paul M. Weiss

THE PATCHETT LAW OFFICE

By:    _____
                Randy Patchett

FUTTERMAN & HOWARD, CHTD.

By:    _____
                Ronald L. Futterman

THE JACOBS LAW FIRM, CHTD.

By:    _____
                John G. Jacobs

KIRBY McINERNEY & SQUIRE, LLP

Edward T. Joyce, Esq.
Randy Patchett, Esq.
Paul M. Weiss, Esq.
December 23, 2000
Page 3

      If the foregoing accurately reflects our arrangement, please execute this agreement on behalf of your firm by signing where indicated below and return the executed copy to us. If there is any question, please call us. We look forward to working with you in this matter.

Sincerely,

Peter S. Linden
Kirby McInerney & Squire, LLP

cc:    Richard L. Stone, Esq.

ACCEPTED AND AGREED TO:

EDWARD T. JOYCE & ASSOCIATES, P.C.

By: _____
      Edward T. Joyce

FREED & WEISS, LLC

By: _____
      Paul M. Weiss

THE PATCHETT LAW OFFICE

By: _____
      Randy Patchett

FUTTERMAN & HOWARD, CHTD.

By: _____
      Ronald L. Futterman

THE JACOBS LAW FIRM, CHTD.

By: _____
      John G. Jacobs

.8:22 FAX 212 751 2540          KIRBY McINERNEY & SQUIRE                    ☒004

KIRBY McINERNEY & SQUIRE, LLP

Edward T. Joyce, Esq.
Randy Patchett, Esq.
Paul M. Weiss, Esq.
December 28, 2000
Page 3

      If the foregoing accurately reflects our arrangement, please execute this agreement on behalf of your firm by signing where indicated below and return the executed copy to us. If there is any question, please call us. We look forward to working with you in this matter.

Sincerely,

Peter S. Linden
Kirby McInerney & Squire, LLP

cc:    Richard L. Stone, Esq.

ACCEPTED AND AGREED TO:

EDWARD T. JOYCE & ASSOCIATES, P.C.

By: _____
           Edward T. Joyce

FREED & WEISS, LLC

By: _____
           Paul M. Weiss

THE PATCHETT LAW OFFICE

By: _____
           Randy Patchett

FUTTERMAN & HOWARD, CHTD.

By: _____
           Ronald L. Futterman

THE JACOBS LAW FIRM, CHTD.

By: _____
           John G. Jacobs

# EXHIBIT 2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

ALAN S. DANIEL et al.,             )
                                    )
               Plaintiffs,      )
                                    )     Case No.  99 CH 11893
                                    )
          v.                    )     Class Action
                                    )
AON CORPORATION, et al.,      )     Judge Julia M. Nowicki
                                    )
               Defendants.      )

## AGREEMENT OF CLASS ACTION SETTLEMENT

THIS AGREEMENT OF CLASS ACTION SETTLEMENT ("Agreement")

is entered into this 9th day of March, 2005 by and between Aon Corporation, as defined in

Section II.19 below ("Aon"), and Plaintiffs Alan S. Daniel ("Daniel") and Williamson

County Agricultural Association ("WCAA") and the Class, as defined in Section II.17 below

(the "Class"), by and through their attorneys.

I.     PREAMBLE

       1.     WHEREAS: Defendant Aon Corporation is a corporation organized under

the laws of the State of Delaware with its principal place of business in Chicago, Illinois. The

remaining Defendants are all direct or indirect wholly owned subsidiaries of Aon

Corporation.

       2.     WHEREAS: Plaintiffs Daniel and WCAA are the named Plaintiffs in the

above captioned action, which was filed individually and on behalf of a Class of certain past

and present customers of Defendants on whose policies Defendants received or were eligible

to receive Contingent Commissions, as defined below.

       3.     WHEREAS: Plaintiffs Daniel and WCAA allege in their Third Amended

Complaint (the "Complaint") that Defendants engaged in improper conduct relating to

C05570

commissions for insurance or other risk solutions products. Defendants deny the allegations of Plaintiffs' complaint and specifically deny the material allegations of liability and wrongdoing. Defendants also have asserted various legal, affirmative and other defenses, including defenses such as: failure to state a claim, statute of limitations, voluntary payment doctrine, ratification and consent, and others.

4.    WHEREAS: The parties reached an agreement to settle The Litigation, as hereinafter defined, on March 4, 2005 as documented in a Memorandum of Understanding.

5.    WHEREAS: Aon has entered into an "Agreement Among the Attorney General of the State of New York, the Superintendent of Insurance of the State of New York, the Attorney General of the State of Connecticut, the Illinois Attorney General, the Director of the Division of Insurance, Illinois Department of Financial and Professional Regulation, and Aon Corporation and its subsidiaries and affiliates (collectively "Aon") dated March 4, 2005," a copy of which is attached hereto as Exhibit A. That agreement is referenced herein as the "Attorney General Settlement Agreement."

6.    WHEREAS: The claims asserted in the Amended Complaint in this case include the claims and allegations addressed in the Attorney General Settlement Agreement, and the proceedings referenced therein.

7.    WHEREAS: Defendants deny that they have violated any law or other duty or agreement or obligation to Plaintiffs or the Class, deny any liability to Plaintiffs or the Class for any claims, causes of action, costs, expenses, attorneys' fees or damages of any kind, deny that they have done anything wrong, and each deny the allegations of wrongdoing in Plaintiffs' Complaint.

C05571

8.    WHEREAS: The Court on July 28, 2004 entered an order certifying this case as a nationwide class action. The class certified by the Court was: "All persons in the U.S. who directly or indirectly employed the services of a direct or indirect subsidiary of the Aon Defendants to obtain insurance or other similar risk solutions products wherein such subsidiary received or was eligible to receive consideration in the form of a bonus, commission or profit sharing (other than fixed consideration based solely upon the actual amount charged by the insurer for the insurance and earned upon the commencement of the insurance) that was not disclosed to and agreed upon by the insured."

9.    WHEREAS: In connection with this Class Action Settlement, and in connection with this Agreement, the Court will modify the definition of the class certified in its July 28, 2004 Order. The amended class definition is contained in Section IV below.

10.    WHEREAS: Defendants maintain that certification of this class for purposes of trial was improper and that Plaintiffs' claims lack merit as a matter of law. Plaintiffs believe that certification of the class was appropriate and that their claims have merit.

11.    WHEREAS: The parties have engaged in substantial investigation and discovery to evaluate the merits of Plaintiffs' claims and Defendants' defenses and also to determine whether Plaintiffs' claims are appropriate for class treatment. The parties have thoroughly analyzed the legal and factual issues surrounding Plaintiffs' claims and Defendants' defenses.

12.    WHEREAS: Plaintiffs and their counsel have concluded that, in light of the costs, risks and delay of litigation, particularly this complex class action litigation, it would be in the best interests of Plaintiffs and the Class to enter into this settlement. Plaintiffs and

C05572

Plaintiffs' counsel also have determined that the Class Action Settlement of this case is fair, reasonable, adequate, and in the best interests of Plaintiffs and the members of the Class.

13.    WHEREAS: Defendants have concluded that, in order to avoid the costs of litigation, a settlement of Plaintiffs' claims in this case is appropriate. In this connection, although Defendants do not agree that certification of this class for purposes of trial was proper, Defendants agree that the Class Action Settlement in this case is fair, reasonable and adequate.

14.    WHEREAS: The parties desire to fully settle and compromise (i) all claims that were brought, are pending, or that could have been brought by the Plaintiffs or any Class Member in this Court or in any other state or federal court, or in or before any administrative agency or other tribunal, or in any other proceeding, relating to or arising from the alleged conduct giving rise to the claims in Plaintiffs' complaint, including but not limited to the claims and alleged conduct addressed in the Attorney General Settlement Agreement and proceedings referenced therein as well as any other claims in any jurisdiction that have been or could have been brought relating to or arising from the conduct giving rise to Plaintiffs' claims and any related conduct regarding the procurement of and/or commissions for insurance or other risk solutions products (all of which claims and issues are hereinafter referred to as "The Litigation") except for claims which are based upon or arise out of the purchase or sale of Aon securities; and (ii) the individual claims of Plaintiffs Daniel and WCAA.

15.    WHEREAS: All parties recognize and agree that the settlement entered into herein and the Attorney General Settlement Agreement were a result of the active litigation in this case by Class Counsel.

-4-

C0557

16. WHEREAS: The parties desire and intend to seek Court approval of the proposed class action settlement of Plaintiffs' claims in this case and, upon Court approval of the class action settlement in this case, the parties intend to seek a Final Order and Judgment from the Court dismissing with prejudice all claims of the Plaintiffs and all members of the Class made in The Litigation as covered by the Release in Section VII, as well as the individual claims of Plaintiffs Daniel and WCAA. The parties agree that this settlement is final and enforceable only upon Court approval of the class action settlement in this case.

NOW THEREFORE, it is agreed that in consideration of the agreements, promises, and mutual covenants set forth in this Agreement of Class Action Settlement, the Release in Section VII of this Agreement, the entry by the Court of a Final Order and Judgment dismissing The Litigation with prejudice and approving the terms and conditions of the settlement as set forth in this Agreement, the dismissal and release of the individual claims of Plaintiffs Daniel and WCAA, and the dismissal of the claims of all Class Members, and for such other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, that this action shall be settled and compromised under the following terms and conditions:

## II. DEFINITIONS

17. As used throughout this Agreement, in addition to any definitions elsewhere in the Agreement, the following terms shall have the meanings set forth below:

"Class" or "Class Member" shall mean and include:

> All U.S. Policyholder Clients who directly or indirectly employed the services of a direct or indirect subsidiary of Aon to place, renew, consult on or service insurance or other similar risk solutions products between January 1, 1994 and December 31, 2004, wherein Aon received or was eligible to receive Contingent Commissions, including consideration in the form of a bonus, commission or profit sharing (other than

-5-

C05579

fixed consideration based solely upon the actual amount charged by the insurer for the insurance and earned upon the commencement of the insurance).

18.    "U.S. Policyholder Clients" shall mean U.S.-domiciled policyholder clients and policyholder clients who retained Aon's U.S. offices to place, renew, consult on or service insurance or other similar risk solutions products.

19.    "Aon" shall mean Aon Corporation, one of the Defendants in The Litigation, as well as Defendants Aon Group, Inc., Aon Services Group, Inc., Affinity Insurance Services, Inc., K & K Insurance Specialties, Inc., K & K Insurance Group, and all those Defendant entities' present or former officers, directors, employees, principals, agents, attorneys, predecessors, successors, affiliates, parents, subsidiaries, divisions, partners, limited partners, unincorporated associations and/or any other entity in which Aon Corporation or any of its present or former direct or indirect affiliates shall have a direct or indirect ownership interest or for which it has any financial responsibility.

20.    "Contingent Commissions" shall mean compensation (other than a specific fee to be paid by the client, or a specific percentage commission on a premium to be paid by the insurer set at the time of purchase, renewal, placement or servicing of the insurance policy, or both) that is contingent upon Aon's: (i) placing a particular number of policies or dollar value of premium with the insurer, (ii) achieving a particular level of growth in the number of policies placed or dollar value of premium with the insurer, (iii) meeting a particular rate of retention or renewal of policies in force with the insurer, (iv) placing or keeping sufficient insurance business with the insurer to achieve a particular loss ratio or any other measure of profitability, (v) providing preferential treatment in the placement process, including but not limited to the giving of last looks, first looks, rights of first refusal, or

C05570

limiting the number of quotes sought from the insurers for insurance placements, or (vi) obtaining anything else of material value from the insurer.

21.    "Class Counsel" shall mean and include for purposes of this Agreement Kirby McInerney & Squire, LLP as Plaintiffs' lead counsel to the Class and Edward T. Joyce and Associates, The Jacobs Law Firm, Chtd. and Futterman and Howard, Chtd. as executive committee counsel to the Class.

22.    "Effective Date of Settlement" shall mean and include for purposes of this Agreement the day on which the Final Order and Judgment approving this Class Action Settlement becomes final. For purposes of this Agreement, the Final Order and Judgment shall be deemed to become final on the later of (a) the day following the date on which the Final Order and Judgment is no longer subject to review by appeal if no notice of appeal or similar notice or motion is filed; or (b) if any such notices or motions are filed, on the day following the date on which the Final Order is not subject to further judicial review or appeal, either by reason of affirmance by a court of last resort or by lapse of time or otherwise, provided that the terms of this Agreement are not reversed or substantially modified by the Court or any reviewing court.

23.    "The Litigation" shall mean and include for purposes of this Agreement of Class Action Settlement all claims that were brought, are pending, or that could have been brought by the Plaintiffs or any Class Member in this Court or in any other state or federal court, or in or before any administrative agency or other tribunal, or in any other proceeding, relating to or arising from the subject matter or the alleged conduct giving rise to the claims in Plaintiffs' complaint, including but not limited to the claims and alleged conduct addressed in the Attorney General Settlement Agreement and proceedings referenced therein,

C05070

as well as all other claims that have been or could have been brought in any jurisdiction relating to or arising from the conduct giving rise to Plaintiffs' claims and any related conduct regarding the procurement of and/or commissions for insurance or other risk solutions products.

III.    SETTLEMENT CONSIDERATION AND BENEFITS

In consideration for a full, complete and final settlement of The Litigation and in consideration for dismissal of The Litigation with prejudice and for the Release in Section VII.1, and in consideration for the dismissal with prejudice of the individual claims of Plaintiffs Daniel and WCAA, Aon agrees to make available to the Class the following benefits:

A.    MONETARY BENEFITS.

(1)    U.S. Policyholder Clients Who Purchased Insurance Between January 1, 2001 And December 31, 2004.

24.    U.S. Policyholder Clients who purchased insurance between January 1, 2001 and December 31, 2004 shall receive the opportunity to obtain a distribution from the $190 million Fund established as part of the Attorney General Settlement Agreement.

25.    Distribution of payments from the Fund to U.S. Policyholder Clients who purchased insurance between January 1, 2001 and December 31, 2004 shall occur as provided for and set forth in the Attorney General Settlement Agreement.

(2)    U.S. Policyholder Clients Who Purchased Insurance Between January 1, 1994 And December 31, 2000.

26.    In addition to the $190 million Fund created as part of the Attorney General Settlement Agreement, Aon shall create an additional fund (the "Daniel Fund") in the amount of $38 million for distribution to U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000. The amount for the Daniel Fund was

C05577

arrived at as a result of arm's length negotiations between the parties supervised by the Court.

27. Distribution of the Daniel Fund shall occur as follows, and as set forth in Sections VIII and IX below.

28. Aon shall, as soon after October 30, 2005 as is reasonably practicable and technologically feasible, determine the amount of the $190 million Fund that is attributable to U.S. Policyholder Clients who purchased insurance between January 1, 2001 and December 31, 2004 who did not request a distribution from the Fund (the "Non-Participating Policyholders Amount").

29. The Non-Participating Policyholders Amount shall be added to the Daniel Fund and made available for distribution to U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000.

30. Distribution of the Daniel Fund shall occur as follows: Within 120 days of the date that the total amount of the Daniel Fund is determined, Aon and the Settlement Administrator shall calculate in accordance with a formula agreed to by the parties and approved by the Court (and that is not in any way inconsistent or in conflict with the formula approved by the Attorneys General under the Attorney General Settlement Agreement) the amount to which U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000 are entitled.

31. The formula for distribution of the Daniel Fund shall, to the extent reasonably practicable and technologically feasible based on Aon's current records, be based on the amount of premium a particular policyholder paid for a particular policy, and an estimation of the amount of Contingent Commissions received that were attributable to that policy. To

C05678

the extent that Aon's current records do not permit distribution of the Daniel Fund in that manner as to certain U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000, distribution of Daniel Fund proceeds shall occur pro rata. The parties recognize that the formula for distribution of the Daniel Fund may be revised, as necessary, by the agreement of the parties and with the approval of the Court to obtain an equitable distribution of Daniel Fund proceeds but that, in no event, shall the formula for distribution of the Daniel Fund proceeds conflict with the provisions of the Attorney General Settlement Agreement.

32. Distribution of amounts from the Daniel Fund to U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000 and who have not validly opted out shall occur in a manner consistent with the procedure and timing set forth in the Attorney General Settlement Agreement with respect to the Fund created in connection with that Agreement.

33. When distribution of the amounts from the Daniel Fund to U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000 and who have not validly opted out does occur (consistent with the time table set forth in the Attorney General Settlement Agreement), checks will be sent to all eligible policyholders for the amounts that they are eligible to receive from the Daniel Fund. The checks will include a release, in a form to be agreed by the parties and approved by the Court, which the Class Member shall be required to sign as a condition of cashing the check. A U.S. Policyholder Client who purchased insurance from Aon during both periods (January 1, 1994 though December 31, 2000 and January 1, 2001 through December 31, 2004) shall be eligible to

C05979

recover from both the Fund created in connection with the Attorney General Settlement Agreement and the Daniel Fund.

34.    Anyone falling within the definition of the Class who previously requested to be excluded may opt in to the Class and participate in the settlement by signing a written request to be included containing the information required by the form of notice approved by the Court.

35.    After distribution of the Daniel Fund is complete, any undistributed funds (other than funds identified for settlement administration as set forth in Section IX) shall be distributed as follows:  Funds attributable to the $190 million Fund established under the Attorney General Settlement Agreement shall be distributed pursuant to that Agreement. Funds attributable to the original $38 million of the Daniel Fund shall be distributed to U.S. Policyholder Clients who purchased insurance between January 1, 1994 and December 31, 2000 pro rata.

36.    Within 45 days of the date of each distribution from the Fund established under the Attorney General Settlement Agreement or the Daniel Fund, Aon and/or the Settlement Administrator shall file a report with the Court and Class Counsel listing all amounts paid in connection with that particular distribution.

(3)    Named Plaintiffs.

37.    The named Plaintiffs Alan Daniel and Williamson County Agricultural Association shall receive an additional payment of $10,000 each from the Daniel Fund for their services as class representatives.

B.    NON-MONETARY BENEFITS

38.    In addition to the monetary benefits made available to Class Members as set forth above, Aon also has agreed to implement certain business reforms identified below.

-11-

C05580

39.     In connection with the implementation of the Settlement in this case, Aon shall file the reports required under Paragraphs 7-21 of the Attorney General Settlement Agreement with Class Counsel and the Court to demonstrate compliance with the non-monetary benefits provisions of this Agreement.

C.     Permissible Forms of Compensation

40.     In connection with its insurance brokerage, agency, producing, consulting and other services in placing, renewing, consulting on or servicing any insurance policy, Aon shall accept only: a specific fee to be paid by the client; a specific percentage commission on premium to be paid by the insurer set at the time of purchase, renewal, placement or servicing of the insurance policy; or a combination of both. Aon shall accept no such commissions unless, before the binding of any such policy: (a) Aon in plain, unambiguous written language fully discloses such commissions, in either dollars or percentage amounts; and (b) the client consents in writing. Nothing in this paragraph relieves Aon of complying with additional requirements imposed by law, including the requirements for written documentation relating to fees paid directly by clients. Aon may not retain interest earned on premiums collected on behalf of insurers without prior notification to the client, and only when such retention is consistent with the requirements of, and is permitted by, applicable law.

41.     Aon shall not hereafter, except as set forth in ¶ 40 above, directly or indirectly accept or request anything of material value from an insurer including, but not limited to, money, credits, loans, forgiveness of principal or interest, vacations, prizes, gifts or the payment of employee salaries or expenses (hereinafter collectively "Compensation").

D.     Prohibition of Contingent Compensation

C05581

42.    In placing, renewing, consulting on or servicing any insurance policy after March 4, 2005, Aon shall not directly or indirectly accept from or request of any insurer any Contingent Compensation. For purposes of this Agreement, Contingent Compensation is any Compensation contingent upon Aon's: a) placing a particular number of policies or dollar value of premium with the insurer, b) achieving a particular level of growth in the number of policies placed or dollar value of premium with the insurer, c) meeting a particular rate of retention or renewal of policies in force with the insurer, d) placing or keeping sufficient insurance business with the insurer to achieve a particular loss ratio or any other measure of profitability, e) providing preferential treatment in the placement process, including but not limited to the giving of last looks, first looks, rights of first refusal, or limiting the number of quotes sought from insurers for insurance placements, or f) obtaining anything else of material value for the insurer.

E.    Prohibition of "Pay-to-Play" Arrangements

43.    In placing, renewing, consulting on or servicing any insurance policy, Aon shall not directly or indirectly accept from or request of any insurer any Compensation in connection with Aon's selection of insurers from which to solicit bids for its clients.

F.    Prohibition of "Bid-Rigging" Arrangements

44.    In placing, renewing, consulting on or servicing any insurance policy, Aon shall not directly or indirectly knowingly accept from or request of any insurer any false, fictitious, inflated, artificial, "B" or "throw away" quote or indication, or any other quote or indication except for a quote or indication that represents the insurer's best evaluation at the time when the quote or indication is given of the minimum premium the insurer would require to bind the insurance coverage desired by Aon's client. Nothing herein shall preclude Aon from accepting or requesting any bona fide quote or indication.

-13-

C05582

### G.    Prohibition of Reinsurance Brokerage "Leveraging"

45.    In placing, renewing, consulting on or servicing any insurance policy, Aon shall not directly or indirectly accept from or request of any insurer any promise or commitment to use any of Aon's brokerage, agency, producing or consulting services, including reinsurance brokerage, agency or producing services, contingent upon any of the factors listed in ¶ 42 a) - f) above.

### H.    Prohibition of Inappropriate Use of Wholesalers

46.    In placing, renewing, consulting on or servicing any insurance policy, Aon shall not directly or indirectly knowingly place, renew, consult on or service its clients' insurance business through a wholesale broker unless agreed to by the client after full disclosure of a) the Compensation received or to be received by Aon, b) any Aon interest in or contractual agreement with the wholesaler, and c) any alternatives to using a wholesaler.

### I.    Mandated Disclosures to Clients

47.    Aon in placing, renewing, consulting on or servicing any insurance policy shall in writing: a) prior to binding, disclose to each client all quotes and indications sought and all quotes and indications received by Aon in connection with the coverage of the client's risk with all terms, including but not limited to any Aon interest in or contractual agreements with any of the prospective insurers, and all Compensation to be received by Aon for each quote, in dollars if known at that time or as a percent of premium if the dollar amount is not known at that time, from any insurer or third party in connection with the placement, renewal, consultation on or servicing of insurance for that client; b) provide disclosure to each client and obtain written consent in accordance with ¶ 40 of this Agreement for each client, and c) disclose to each client at the end of each year all Compensation received during the preceding year or contemplated to be received from any

-14-

C05583

insurer or third party in connection with the placement, renewal, consultation on or servicing of that client's policy.

### J.     Standards of Conduct and Training

48.     Aon shall implement company-wide written standards of conduct regarding Compensation from insurers, consistent with this Settlement Agreement which implementation shall include, *inter alia*, appropriate training of relevant employees, including but not limited to training in business ethics, professional obligations, conflicts of interest, anti-trust and trade practices compliance, and record keeping.

49.     Aon shall not place its own financial interest ahead of its clients' interests in determining the best available insurance product or service for its clients. Aon shall communicate with its clients in sufficient detail to enable them to make informed choices on insurance products or services, and shall provide complete and accurate information to prospective and current clients on all proposals and bids received from insurers, including the amount of Compensation or other things of value that were or will be paid to Aon by each insurer.

### K.     Limitation of Extraterritorial Effect

50.     The provisions of paragraphs 38 through 49 shall apply only to those Aon entities that (1) service clients domiciled in the United States; (2) place, renew, consult on or provide services for policies covering risks in the United States; or (3) are, themselves, domiciled in the United States.

## IV.     MODIFICATION OF CLASS DEFINITION

For purposes of this Settlement, the definition of the class certified by the Court in its July 25, 2004 Order shall be amended as follows:

-15-

C05584

All U.S. Policyholder Clients who directly or indirectly employed the services of a direct or indirect subsidiary of Aon to place, renew, consult on or service insurance or other similar risk solutions products between January 1, 1994 and December 31, 2004, wherein Aon received or was eligible to receive Contingent Commissions, including consideration in the form of a bonus, commission or profit sharing (other than fixed consideration based solely upon the actual amount charged by the insurer for the insurance and earned upon the commencement of the insurance).

## V.    DENIAL OF WRONGDOING OR LIABILITY

This Agreement of Class Action Settlement constitutes the resolution of disputed claims, is for settlement purposes only, and shall not be used for any other purpose. Defendants expressly deny that they have violated any law, breached any agreement or obligation to Plaintiffs or the Class, or engaged in any wrongdoing with respect to Plaintiffs or the Class. Defendants deny that they are liable to Plaintiffs or to the Class for any claims, causes of action, costs, expenses, attorneys' fees or damages of any kind relating to The Litigation. Neither this Agreement nor any actions undertaken by Defendants, individually or collectively, in satisfaction of this Agreement shall constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any allegation of fact or law made by Plaintiffs in this action or in any other action or proceeding. This Agreement, any statements or negotiations made in connection with this Agreement, and any actions undertaken by any of the Defendants under this Agreement, shall not be offered or be admissible in evidence or in any other fashion against any of the Defendants in any action or proceeding for any purpose, except (i) in any action or proceeding brought to enforce the terms of this Agreement by or against Plaintiffs, the Class, or Class Members, or Defendants, or (ii) by Defendants in defense of any claims brought by Plaintiffs, the Class, or Class Members.

## VI.    SETTLEMENT APPROVAL

C05580

Upon execution of this Agreement of Class Action Settlement by all parties, the parties agree to undertake the following actions to obtain preliminary and final approval of this Agreement and the Class Action Settlement reflected herein:

51. Promptly after the execution of this Agreement, as soon as is reasonably practicable and consistent with the Court's schedule, Class Counsel and counsel for Defendants shall jointly present this Agreement to the Court and request an Order (i) preliminarily approving this Agreement (in the form attached hereto as Exhibit A) and finding the settlement sufficiently fair, reasonable and adequate to allow notice to be disseminated to members of the Class, (ii) preliminarily barring and enjoining all Class Members, or any of them, from commencing or prosecuting any actions asserting any of the settled claims, either directly, representatively, derivatively or in any other capacity, against any of the settling Defendants herein, pending the final determination of whether the settlement provided for in this Agreement should be approved by the Court, (iii) setting a schedule for the submission of a form of notice of preliminary approval of the proposed Settlement and Attorneys' Fees Petition notice to Class Members and a plan for Notice and (iv) setting a schedule for objections and a hearing on final approval of the settlement.

52. Within 20 days of the date of preliminary approval, or as Ordered by the Court, the parties shall jointly present to the Court a proposed notice and notice plan for providing notice to Class Members that the Court has preliminarily approved the Settlement and describing Class Counsel's request for Attorneys' Fees and Costs, describing the terms of and releases set forth in the settlement and providing Class Members with the opportunity to object to the settlement, including the method and deadlines for doing so ("Notice").

C05586

53. It shall be the responsibility of Class Counsel to respond to all inquiries from Class Members as appropriate. Plaintiffs also shall be responsible for receiving written objections. Copies of any such written objections shall be provided to counsel for Defendants and the Court promptly.

54. Class Members who have failed to file a proper and timely exclusion from the Settlement shall be bound by this Agreement, including the Release contained herein and any Final Order and Judgment and shall have the opportunity to receive Settlement Benefits as described herein. Class Members who fail to file and timely and proper objection to this Settlement or the request for attorneys' fees and expenses shall waive and forfeit and shall otherwise be barred from individually and/or separately objecting to the Settlement or the request for attorneys' fees and expenses at the fairness hearing and shall be bound by all terms of this Agreement, including the Release, and any Final Order and Judgment.

55. Upon the final approval of this settlement by the Court, the parties shall jointly seek a Final Order and Judgment dismissing The Litigation with prejudice and without further costs, including but not limited to claims for interest, penalties, costs and attorneys' fees.

56. Following entry by the Court of the Final Order and Judgment provided for in this Agreement of Settlement and completion of all obligations and undertakings set forth therein, no default by any party shall affect the final dismissal of this action with prejudice, the discharge of any of the Defendants, either individually or collectively, or the Release provided in connection with this Agreement.

57. This Agreement shall, if any of the Defendants elect, be null and void and shall have no further force and effect with respect to any party in this action in the event that

C05587

(i) the preliminary and final approval of the settlement described in this Agreement of Settlement is not obtained, or if such approval is reversed on appeal; (ii) the Effective Date of Settlement as described in Section II above does not occur for any reason; (iii) entry of the Final Order and Judgment described in Section VII below is reversed; (iv) the Final Order and Judgment is substantially modified by the Court, or on appeal, and Defendants do not agree with its modification; or (v) the Attorney General Settlement Agreement is not executed by the parties to that agreement or is otherwise rendered void or unenforceable. In such event, this Agreement shall not be offered in evidence or used in this or any other action for any purpose including, but not limited to, the existence, certification or maintenance of any purported class or in connection with a trial or appeal of this matter or any matter relating to alleged conduct regarding the procurement of and/or commissions for insurance or other risk solutions products. In such event, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection with this Agreement shall be without prejudice to any party and shall not be admissible into evidence, and shall not be deemed or construed to be an admission or confession by any party of any fact, matter or proposition of law, and shall not be used in any manner for any purpose, and all parties to this action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

58.     Plaintiffs and Defendants, individually and collectively, agree to take all actions necessary to obtain preliminary approval of this Settlement, final approval of this Settlement and entry of the Final Order and Judgment dismissing this action with prejudice as to Plaintiffs and all Class Members. Plaintiffs and Defendants also agree to take all actions necessary to obtain dismissal of all pending lawsuits, and all other subsequent lawsuits that

-19-

C05588

may be filed by Class Members who have not validly opted out between the time that this Agreement is executed and the Effective Date of Settlement, relating to the subject matter of The Litigation against Defendants, either individually or collectively, for claims covered by the Release in Section VII. Any Class Member who remains in the class and thereby receives benefits under this Settlement Agreement shall submit any and all disputes regarding the settlement, including but not limited to, disputes relating to the amount that the Class Member is entitled to receive under the settlement or the timing or method of that payment, for resolution as follows: First, the Class Member shall contact Class Counsel who, working with counsel for Defendants, shall make a reasonable attempt to resolve the dispute amicably. Second, if the dispute cannot be amicably resolved, the Class Member shall file a request with Judge Julia M. Nowicki in the Circuit Court of Cook County, Illinois, to have the dispute resolved. The decision by the Circuit Court of Cook County shall constitute a full and final resolution of the dispute and shall be binding on the Class Member, Class Counsel and Defendants.

## VII. RELEASE AND DISMISSAL OF CLAIMS

59.    In consideration of the benefits described in Section III above, Plaintiffs agree and the Class and each Class Member agree, to the following release:

Release: Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors,

-20-

C05589

administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Final Order and Judgment, shall have hereby released, waived and discharged Defendants, including their subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted before the Court in this action (collectively, "claims"), to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters that are the subject of The Litigation including but not limited to conduct regarding the procurement of and/or commissions for insurance or other risk solutions products, except for claims which are

C05590

based upon or arise out of the purchase or sale of Aon securities. The parties recognize and agree that this is a general release.

60.    Upon the Effective Date of Settlement, for the consideration provided for herein and by operation of the Final Order and Judgment, Plaintiffs shall have, and each Class Member and the Class shall be deemed to have, covenanted and agreed that he, she or it shall not, at any time, institute, cause to be instituted, assist in instituting or permit to be instituted on his, her or its behalf any proceeding in any state or federal court, in or before any administrative agency, or any other proceeding or otherwise allege or assert any of the claims released against Defendants, individually or collectively, in Section VII above.

61.    In consideration of the Benefits described in Section III above, Plaintiffs agree, and each Class Member shall be deemed to have agreed upon the Effective Date of the Settlement, to the dismissal with prejudice of the litigation entitled *Alan Daniel v. Aon Corporation*, Case No. 99 CH 11893, pending in the Circuit Court of Cook County, Illinois.

VIII.    ATTORNEYS' FEES AND EXPENSES

Payment of attorneys' fees, costs and expenses is subject to the review and approval of the Court. In connection with this settlement, Class Counsel will apply to the Court for an aggregate award of attorneys' fees and expenses. Any attorneys' fees and expenses awarded to Class Counsel shall be awarded exclusively from the initial $38 million Daniel Fund, and Aon shall not be responsible for payment of any attorneys' fees or expenses to Class Counsel or otherwise other than an award to Class Counsel approved by the Court from the initial $38 million Daniel Fund. The amount of attorneys' fees and expenses requested by Class Counsel shall be disclosed in the written Notice to Class Members. The Final Order and Judgment in this action shall include the Court's award of any attorneys' fees and expenses.

C05591

Subject to Court approval, Aon will pay or cause to be paid to Class Counsel such Fees and Expenses as may be awarded by the Court within ten days after the Effective Date. If the Effective Date of the Final Order is delayed by the filing of a notice of appeal, within fourteen days after the filing of such notice of appeal, Aon shall deposit an amount equal to the amount of attorneys fees and expenses awarded by the Court to a bank for deposit into an escrow account for investment in a mutually acceptable investment vehicle. The funds so transferred shall be held in escrow pending resolution of such an appeal. If the Final Approval of the Settlement is affirmed on appeal and the Effective Date therefore occurs, Class Counsel shall be entitled to the funds and accumulated interest in the escrow account. If the Final Approval of the Settlement is reversed on appeal, the escrowed funds described in this paragraph and any interest accumulated thereon shall revert to Aon.

IX.     SETTLEMENT ADMINISTRATION EXPENSES

Aon shall be solely responsible for costs incurred in administering this Settlement, including costs of notice to Class Members, as follows: The amount of $5 million of the initial $38 million Daniel Fund shall be designated exclusively for the payment of settlement administration costs, including the cost of Notice to Class Members. Aon expects to retain the services of a settlement administrator to assist in settlement administration, and the fees and costs charged by the administrator are expressly included within the costs of settlement administration under this Agreement. Aon shall be responsible for any administration and Notice costs in excess of $5 million. If, after the conclusion of the distribution of all monetary benefits, there remains any unused portion of the $5 million designated for the payment of administrative costs, that unused portion shall revert to Aon.

C05592

## X. MISCELLANEOUS PROVISIONS

62.    Entire Agreement. This Agreement and its attachments or the portions thereof incorporated into this Agreement, if any, shall constitute the entire Agreement of the parties and shall not be subject to any change, modification, amendment, or addition without the express written consent of counsel on behalf of all parties to the Agreement and shall be binding and inure to the benefit of the parties hereof and their representative heirs, successors and assigns.

63.    Illegality or Unenforceability of Provisions. In the event that the Release contained in Section VII of this Agreement shall for any reason be held in whole or material part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement if Defendants, individually or collectively, elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement. If no such election is made, then the Agreement shall be null and void. In the event any one or more of the remaining material provisions contained in this Agreement shall for any reason be held in whole or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement if Plaintiffs or Defendants, individually or collectively, elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement. If no such election is made, then the Agreement shall be null and void. If this Agreement is terminated for any reason prior to issuance by the Court of an Order approving the settlement, or if the settlement contemplated by this Agreement is not concluded substantially as described in this Agreement with an Order of the Court approving the settlement that becomes final after all appeals, then the Agreement and all other acts taken to

-24-

C05593

effect a settlement shall be void and of no effect and shall not be admissible by or against

any Party to this Agreement. The parties to this Agreement shall use their best efforts to

obtain approval of this Agreement by the Court.

64. **Amounts Paid Not Penalty.** It is understood that no consideration or amount

or sum paid, credited, offered, or expended by Defendants in its or their performance of this

Agreement constitutes a penalty, fine, punitive damages or other form of assessment for any

alleged claim or offense.

65. **Agreement Mutually Prepared.** This Agreement shall be deemed to have

been mutually prepared by the parties and shall not be construed against any of them by

reason of authorship.

66. **Independent Investigation And Decision.** The parties hereto understand,

acknowledge and agree that they (i) have each performed an independent investigation of the

allegations of fact and law made in connection with this action, and (ii) that they each may

hereafter discover facts in addition to, or different from, those that they now know or believe

to be true with respect to the subject matter of this Agreement. Nevertheless, it is the parties'

intention to resolve their disputes pursuant to the terms of this Agreement and, thus, in

furtherance of their intentions, the Agreement shall remain in full force and effect

notwithstanding the discovery of any additional facts or law, or changes in law, and this

Agreement shall not be subject to rescission or modification by reason of any change or

difference in facts or law.

67. **Authority to Enter into Agreement.** The parties hereby warrant and

represent that the persons signing this Agreement of Class Action Settlement on each of their

behalves have full power and/or authority to bind to all terms of this Agreement of Class

C05594

Action Settlement every person, partnership, corporation or entity (who has not validly opted out) included within the definitions of Plaintiffs and the Class.

68.    **No Promise or Inducement for Release.**  The parties hereto warrant and represent that no promise or inducement has been offered or made for the Release in Section VII except as herein set forth, that this Release is executed without reliance on any statements or any representations not contained herein, and this Release reflects the entire agreement among the parties with respect to the terms of the Release.  The warranties and representations made herein shall survive the execution and delivering of this Release and shall be binding upon the respective heirs, representatives, successors and assigns of each of the parties.

69.    **Binding Agreement.**  Plaintiffs and Defendants, individually and collectively, expressly agree that the terms of this Agreement and all provisions hereof, including all representations, promises, agreements, covenants, and warranties, are contractual and not a mere recital and shall survive the execution of this Agreement and entry of the Final Order and Judgment and shall continue in full force and effect thereunder. This Agreement shall be binding upon and inure to the benefit of the parties hereof and their representatives, heirs, successors, and assigns.

70.    **Understanding of Settlement and Release.**  The parties acknowledge, agree and specifically warrant to each other that they have fully read this Agreement of Class Action Settlement and the Release contained herein, and fully understand this Agreement, the Release and its effect.

C 0 5 5 9 5

71.   **Extensions of Time.** The parties may agree, subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Agreement.

72.   **Execution of Agreement in Counterparts.** This Agreement may be executed in counterpart by the parties hereto, and a facsimile signature shall be deemed an original signature for purposes of this Agreement.

73.   **Retention of Jurisdiction.** The Court shall retain continuing and exclusive jurisdiction over the parties hereto, including the Class Members, for the purpose of enforcing, implementing and interpreting this Agreement, and over the administration and enforcement of the settlement, Release, and distribution of benefits to Class Members. This retention of jurisdiction shall not interfere with any provision of the Attorney General Settlement Agreement including any provision therein regarding enforcement of that Agreement.

74.   **Controlling Law.** This Agreement of Class Action Settlement shall be governed by the laws of the State of Illinois.

75.   **Confirmatory Discovery.** Although Aon has provided extensive discovery to date, Aon agrees to provide Plaintiffs' counsel with information to confirm the revenue information provided to date and, to the extent reasonably practicable, to be provided with respect to the revenue information relating to the Class Period.

76.   **Public Statements Regarding The Settlement.** The parties and their counsel agree that neither they nor their representatives will issue a press release. The parties and their counsel further agree that neither they nor their representatives will issue public statements regarding this settlement or the proceedings seeking preliminary approval

C 0 5 5 9 6

of the settlement without the consent of the other party and, if the other party requests, approval of the Court. Nothing herein will preclude Class Counsel from communicating with individual class members or from responding to inquiries from Class Members regarding this case, the proposed settlement or the proceedings for seeking preliminary approval of the settlement, and nothing herein will preclude Defendants from making disclosures in connection with any required financial filings or from communicating with their current, former or prospective customers in the ordinary course of business. Finally, both parties recognize that the settlement documents and fairness hearing(s) will be in the public record. Thus, outside of court and until the settlement is finally approved, the parties and their counsel will avoid commenting about the settlement except as provided above except that they may report that a settlement has been reached.

C05597

DATED: March 9, 2005

_Leslie Smith_

Richard C. Godfrey, P.C.
Robert B. Ellis, P.C.
Leslie M. Smith, P.C.
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60606

Representatives for
Aon Corporation

DATED: March 9, 2005

_Edward T. Joyce_

Edward T. Joyce
EDWARD T. JOYCE &
ASSOCIATES, PC
11 S. LaSalle Street
Suite 1600
Chicago, IL 60601

and

_Phil Lee Stone_

Peter Linden
Richard L. Stone
KIRBY MCINERNEY & SQUIRE
830 Third Avenue, 10th Floor
New York, NY 10022

Class Counsel

-29-

C05598

# EXHIBIT 3



# NIXON PEABODY LLP

ATTORNEYS AT LAW

437 Madison Avenue
New York, New York 10022
(212) 940-3000
Fax (212) 940-3111

Roger R. Crane, Esq.
Direct Dial: (212) 940-3190
Direct Fax: (866) 293-9537
E-Mail: rcrane@nixonpeabody.com

*[handwritten endorsement, stamped "MEMO ENDORSED"]*

We can discuss ① 12/15/06 conference November 8, 2006 ② 9:00 A.M. In any event, no more than 1 motion. Copies of both parties would be needed. (See Rules re: page limits.)

SO ORDERED.
Date: 11/8/06    Richard M. Berman
Richard M. Berman, U.S.D.J.

**VIA HAND DELIVERY**

The Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
Room 650
New York, New York 10007

Re:    Stone v. Joyce, No. 06 CV 2433

Dear Judge Berman:

Pursuant to your rule regarding motions, I submit this letter to explain why I plan to file two motions in this case: (1) a motion in opposition to plaintiff's request to enter the default of Edward T. Joyce and Edward T. Joyce Associates, P.C. dated October 24, 2006; and (2) a motion to dismiss or, in the alternative, to transfer this action.

In 1999, Alan S. Daniel ("Daniel") filed a class action in Cook County, Illinois against Aon Corporation and various related entities (hereinafter, "the Cook County litigation"). Daniels, a New Jersey resident, alleged that the Cook County litigation could and should be brought in Illinois. That complaint was filed on Daniel's behalf by: (a) Kirby, McInerney & Squire LLP (the "Kirby firm")—a New York law firm which is a plaintiff here; (b) Futterman & Howard, Chtd. (the "Futterman firm")—an Illinois law firm which is not a party here; and (c) the Jacobs Law Firm, Chtd. (the "Jacobs firm")—an Illinois law firm which is not a party here. The other plaintiff here, Richard L. Stone, represents Daniel through Stone's "of counsel" relationship with the Kirby firm.

In 2000, through discussions between the Kirby firm and the defendants here—Edward T. Joyce and Edward T. Joyce & Associates, P.C. (the "Joyce firm")—an agreement was reached whereby Williamson County Agricultural Association ("Williamson," an Illinois not-for-profit,

*[stamp]* USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: DATE FILED: 11/8/06

NIXON PEABODY LLP

Honorable Richard M. Berman
November 8, 2006
Page -2-

would join the Cook County litigation as a second class representative. At that time, Williamson was represented by: (a) the Joyce firm—an Illinois law firm which is a defendant here; (b) the Patchett Law Office (the "Patchett firm")—an Illinois law firm which is not a party here; and (c) Freed & Weiss, LLC (the "Freed firm")—an Illinois law firm which is not a party here.

The terms under which Williamson would join the Cook County litigation were memorialized in a December 28, 2000 letter agreement, which plaintiffs here claim is the basis of their action for declaratory relief. One of those plaintiffs—Stone—is not a party to the letter agreement. Moreover, four of the parties to the letter agreement—the Futterman, Jacobs, Patchett and Freed firms—are not parties to the litigation before this Court. Finally, Mr. Joyce is a defendant here even though he, personally, is not a party to the letter agreement.

After execution of the letter agreement, all class counsel performed legal services in furtherance of the Cook County litigation. After the Cook County court certified the class and Aon agreed to a settlement, all class counsel sought the court's approval of the settlement and petitioned for a fee award.

In March 2006, the Cook County court approved the class settlement and awarded $19 million of attorneys' fees to class counsel. Class counsel did not suggest to the court how the fee should be allocated among class counsel, and did not provide a factual basis on which to make such an allocation. Accordingly, the Cook County court's order awarding fees made no allocation among class counsel.

Soon thereafter, it became clear that class counsel could not reach an agreement on allocation. Therefore, the Joyce firm, through counsel (Joseph E. Tighe), served all other class counsel with a motion asking that the Cook County court determine the proper allocation. Since the service of that motion to allocate, the following events have occurred:

    (a)    The Futterman and Jacobs firms have aligned themselves with the Kirby firm's position regarding allocation;

    (b)    The Patchett firm has aligned itself with the Joyce firm's position regarding allocation;

    (c)    The Freed firm has aligned itself with the Joyce and Patchett firms regarding the dispute with Kirby/Futterman/Jacobs, although the Freed firm also has a dispute with Joyce/Patchett;[1]

    (d)    The Kirby firm and Stone filed this case;

---

[1]    In that regarding, the Freed firm filed its own allocation motion with the Cook County court.

NIXON PEABODY LLP

Honorable Richard M. Berman
November 8, 2006
Page -3-

    (e)    The Cook County court ordered all class counsel to mediate the fee allocation disputes, and stated that it would not address those disputes unless/until mediation proved unsuccessful;

    (f)    The Cook County court also sought to level the playing field by entering an order that would allow the Joyce firm's allocation motion to go forward in the Cook County litigation unless this case was similarly stayed during the mediation;

    (g)    The mediation recently terminated unsuccessfully, at which time the Joyce firm's Chicago counsel began work on a motion to dismiss, or in the alternative, to transfer this action; and

    (h)    Before that work was completed, the Clerk of this Court entered a default against the defendants.

Consequently, I plan to file a motion to vacate the default, supported by an affidavit from the Joyce firm's Chicago counsel. I also plan to file a second motion, because I believe that plaintiffs' complaint should be dismissed for failure to join indispensable parties (the Futterman, Jacobs, Patchett and Freed firms). I also believe that plaintiff Stone should be dismissed for lack of standing; the action should be dismissed for lack of personal jurisdiction, or in the alternative, transferred to the Northern District of Illinois; and that the individual defendant should be dismissed because he is not a party to the letter agreement that plaintiffs ask this Court to construe. Finally, I believe plaintiffs' complaint fails to state a claim for declaratory relief, because the letter agreement whose construction is desired does not specify how to allocate the lump sum class counsel fee awarded in the Cook County litigation.

Accordingly, it is respectfully requested that a pre-motion conference be scheduled to address the above two motions.

            Sincerely,

            Roger R. Crane, Esq.

RRC/lc

cc:  Peter S. Linden, Esq.
      Roger W. Kirby, Esq.
      Richard Stone, Esq.