UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RICHARD L. STONE and KIRBY McINERNEY LLP,

                                    Plaintiffs,

                                                              08 CV 5171 (RPP)

         - against -

                                                              **OPINION**
JOHN RANDY PATCHETT and PATCHETT LAW OFFICE.       **AND ORDER**

                                    Defendants.,

------------------------------------------------------------------------X


**ROBERT P. PATTERSON, JR., U.S.D.J.**

         In this dispute amongst law firms regarding the allocation of legal fees ascertained

as a result of a settlement of a class action brought in Illinois state court against the Aon

Corporation, Plaintiffs Kirby McInerney LLP and Richard Stone ("Plaintiff" or "Kirby")

brought an action in this case against one other member of class counsel, Edward T.

Joyce ("Joyce"), an Illinois lawyer.  As a result of the action, the fee dispute between

Kirby and Joyce was arbitrated in Georgia.  Once the arbitration award, which favored

Kirby, was confirmed by a federal district court judge in Georgia, Kirby filed a complaint

in this Court on June 5, 2008, which was amended on August 21, 2008 ("Compl."), to

enforce the confirmed arbitration award against a second member of class counsel,

Defendants John Randy Patchett and the Patchett Law Office ("Defendant" or

"Patchett").  Patchett had not participated in the Georgia arbitration.

         On October 2, 2008, Patchett filed a motion to dismiss, arguing primarily that

under the Supreme Court's decision in <u>Colorado River Water Conservation Dist. v.</u>

<u>United States</u>, 424 U.S. 800 (1976), this Court should abstain from exercising jurisdiction due to the existence of the class action that is currently pending in Illinois appellate courts.  In the alternative, Patchett moves to dismiss on the grounds that this Court lacks personal jurisdiction over him under both the long-arm statute of New York and the Due Process clause of the federal constitution.  Lastly, Patchett asserts that venue is improper here because none of the events and transactions underlying this lawsuit took place in New York.

On November 14, 2008, Plaintiff filed a motion to strike affidavits submitted with Patchett's reply papers from Edward T. Joyce, Esq., and Julia M. Nowicki, a now retired judge of the Circuit Court of Cook County, Illinois.  On March 25, 2009, this Court held oral argument.  For the reasons set forth below, Defendant's motion to dismiss is denied.  Accordingly, Plaintiff's motion to strike is denied as moot.  The parties are directed to appear before this Court for a status on conference on May 11, 2009 at 4:00 p.m.

**1. Factual Overview**

    A.  <u>The commencement of the Aon action</u>

On or about August 19, 1999, Kirby, a law firm based in New York, commenced a purported class action in the Cook County of Illinois Circuit Court ("Illinois Circuit Court") against the Aon Corporation concerning certain contingent commissions paid by class members to Aon in connection with the placement of commercial insurance for Aon's customers (the "Aon action").  (Compl. ¶¶6, 12; Declaration of Peter S. Linden, dated October 27, 2008 ("Linden Aff."), ¶2; Declaration of John Randall Patchett, submitted on October 2, 2008 ("Patchett Aff."), ¶7.)  At the time of the commencement of the lawsuit, the only proposed class plaintiff was Alan Daniel; Kirby employed

Futterman & Howard ("Futterman") and the Jacobs Law Firm ("Jacobs") to serve as local counsel in Illinois for Daniel.  (Linden Aff. ¶2.)

Kirby was concerned as to whether Daniel was a member of the putative class, so in November of 2000, Kirby called Illinois lawyer Joyce to discuss the Aon action. (Declaration of Edward T. Joyce, dated November 6, 2008 ("Joyce Aff."), ¶3.)  Kirby asked Joyce if any of his clients were plaintiffs in the putative class and, if so, whether one of them would agree to join Daniel as a putative class representative.  (Id. ¶3.)  Joyce called other Illinois law firms, and then called Kirby back to say that Williamson County Agricultural Association ("Williamson") was in the putative class and was willing to become a class representative with Daniel.  (Id. ¶¶6-7.)  Williamson was a client of Patchett, a "small Illinois law firm with its sole office located in Marion, Illinois." (Patchett Aff. ¶¶5, 7.)

On December 28, 2000, Kirby entered into a written agreement (the "Agreement" or "Contract") with three Illinois law firms -- Freed & Weiss ("F&W"), Patchett, and Joyce, collectively referred to as "Williamson's counsel."  (Linden Aff. ¶5; Patchett Aff. ¶9.)  In pertinent part, the agreement specified that "Joyce, F&W and Patchett have referred … Williamson … for inclusion as a plaintiff in the pending class action styled Daniel v. Aon Corporation, et al … or for the commencement of a similar class action on Williamson's behalf."  (Linden Aff., Ex. A [Contract ¶1]; Compl. ¶¶15-17.)  With regard to any ascertained fees that would be allocated amongst counsel, the Contract specified that:

> In consideration for the services performed by Williamson's Counsel in
> connection with preparing the Williamson case, and in the event the court
> awards fees to plaintiffs' counsel in this action, Williamson's Counsel
> collectively will receive 15% off the top of the fees awarded to plaintiffs'
> counsel in this action, subject to the conditions specified below.  In

addition, Williamson's Counsel collectively will receive significant work in the referenced class action or a similar class action to be commenced on behalf of Williamson.

(Linden Aff., Ex. A ¶3.)  The contract further provided that Kirby would act as "lead counsel" and would be responsible for "managing the prosecution of th[e] action, making work assignments in th[e] action, for determining strategic decisions in the litigation of this action, conducting discovery, preparing for trial, and for initiating and directing settlement discussions with counsel for defendants."  (Linden Aff., Ex. A ¶4.) Williamson's counsel would act as "members of, and constitute, an Executive Committee," which would be responsible for "assisting" Kirby in the action.  (Id.) Lastly, the Agreement noted that should Williamson not ultimately be "certified as a class representative, but the action nevertheless achieves a successful outcome," Williamson's counsel could "apply at the conclusion of the action for reimbursement of attorneys' fees and expenses actually incurred."  (Id.)

The contract was drafted on Kirby letterhead, which bore a New York address; Patchett, along with the other Illinois law firms, signed the agreement in Illinois and then faxed the signatures to Kirby in New York.  (Linden Aff., Ex. A [Contract's signature pages].)  Kirby further alleges that several drafts of the Agreement were negotiated by phone and fax between Kirby and Joyce.  (Linden Aff. ¶5; Compl. ¶14.)  Kirby contends that Joyce informed him that Williamson was originated by Patchett and that Joyce had asked F&W to work on "the case due to [Joyce's] preexisting working relationship with Paul Weiss,"of F&W.  (Linden Aff. ¶5.)  Joyce "made clear" to Kirby "that he was negotiating, with express authority on his own behalf and on behalf of Patchett" and F&W.  (Id.)

Joyce further made known that he, Patchett and F&W were "working as partners and joint venturers in their representation of Williamson pursuant to the [agreement], and that they had agreed as to how to divide up the 15% fee provided for in the [agreement] which they would share as partners." (Linden Aff. ¶5; Compl. ¶13.)  To this, Joyce responds that he never told Kirby how Williamson's counsel would divide the 15% "off the top" fee; he asserts, however, that Williamson's counsel agreed amongst themselves that the division of fees would be made in proportion to the services performed and responsibility assumed by each lawyer, in accordance with Rule 1.5(g) of the Illinois Rules of Professional Conduct.  (Joyce Aff. ¶6.)

During the prosecution of the Aon action from 2000 to 2005, Kirby asserts that he had "numerous communications with Patchett," which included: "1) faxes from Patchett, including his executed signature page to the Contract; 2) numerous emails to and from Patchett requesting or providing information to be used in prosecuting the Aon action; 3) telephone calls concerning Patchett's client and preparation of Patchett and Joyce to defend the deposition of Williamson; and 4) correspondence concerning the Aon action, including sending copies of filed documents and collecting Patchett's lodestar summary and related information in connection with the Aon settlement." (Linden Aff.  ¶8; Compl. ¶¶3-4, 21-23.)

Specifically, and providing documentary support for some of his averments, Kirby asserts that: Patchett faxed the executed contract to him in New York on January 1, 2002; that Kirby, located in New York, spoke with Patchett by telephone on November 1, 2001 concerning Aon; that Patchett wrote to Kirby in New York on January 8, 2001 requesting additional information, which Plaintiff supplied (Linden. Aff., Ex. B [01/08/01 letter]);

that Kirby wrote Patchett on January 4, 2002 to follow up on a substantive conversation Kirby had with Patchett in December, 2001 (Linden Aff., Ex. C [01/04/02 letter]); that on January 11, 22, and 24, and February 22, 2002, Patchett emailed Kirby at his office in New York in connection with Aon (Linden Aff., Exs. D, E [emails]); that from January through March, 2002, Patchett had several telephone conversations concerning Aon with Plaintiff, who was located in New York; that on March 13 and 14, 2002, Kirby, located in New York, spoke by telephone to Patchett and then sent a memo concerning an upcoming deposition to him; that on March 21, 2002, Patchett wrote to Kirby in New York requesting certain documents related to Aon (Linden Aff., Ex. F [03/21/02 letter]); that on April 2, 2002, Plaintiff mailed documents to Patchett from his office in New York; that on July 15, 2002, Plaintiff mailed a legal memorandum to Patchett from his office in New York (Linden Aff., Ex. H [07/15/02 letter]); that on December 2, 2005, Patchett sent three emails concerning Aon to Plaintiff at his office in New York; and, that throughout the course of the action, Kirby, from its New York office, sent Patchett copies of pleadings related to Aon.  (Linden Aff. ¶9(a)-(p).)

In response, Patchett asserts that: all the work he performed in "connection with the prosecution of the Aon litigation was performed in Illinois"; that his "only contact with New York throughout the entire course of the Aon litigation was when [he] faxed a copy of the executed Letter Agreement" to Plaintiff in New York; that he "never attended meetings in New York concerning the Aon litigation, nor did he perform any work in connection with the prosecution of the Aon Litigation" in New York; that he "never traveled to New York for any reason while the Aon Litigation was pending"; and, that he was not "and was not required to, submit any notices or payments related to the

[Contract] to anyone in New York, and was not supervised by anyone in New York."
(Patchett Aff. ¶¶12-13.)

Kirby also had regular interaction with Joyce during the prosecution of the Aon action. (Linden Aff. ¶10; Compl. ¶¶21-23.) This included: "1) hundreds of emails concerning the prosecution of the Aon action; 2) dozens of letters (and emails), many of which enclosed documents for Joyce's review and comment; 3) dozens of letters, faxes and emails from Joyce and his office, many including comments on documents prepared by Kirby; and 4) hundreds of phone calls concerning the prosecution and settlement of the Aon action." (Id.) Additionally, Joyce met with Kirby on at least two occasions in New York to discuss the Aon action." (Linden Aff. ¶10; Compl. ¶¶21-22.) Joyce does not deny these contacts with Plaintiff. (Joyce Aff. ¶9.)

B. The Settlement of the Aon Action and the ensuing dispute over counsel fees.

On July 28, 2004, the Illinois Circuit Court certified the class and appointed Kirby as sole lead class counsel; on March 9, 2005, a proposed Settlement Agreement was reached with Aon, which will result in an award to plaintiffs of between $85-$90 million. (Compl. ¶¶19-20; Compl. Ex. 2 [settlement agreement].) The Settlement Agreement, which was submitted to Illinois Circuit Court Judge Julia M. Nowicki, was signed only by Joyce and Kirby as "class counsel," and the agreement defined "Class Counsel" for "purposes of this Agreement" as Kirby for "Plaintiffs' lead counsel," and Joyce and Futterman as "executive committee counsel to the Class." (Compl. Ex 2 ¶21; Linden Aff. ¶11; Affidavit of Julia M. Nowicki, dated November 4, 2008 ("Nowicki Aff."), ¶¶3-5.) Patchett was not mentioned as class counsel in the settlement agreement.

The settlement agreement provided that "payment of attorneys' fees," "expenses," and "costs" ($19 million) would be "subject to the review and approval of the" Illinois Circuit Court.  (Compl. Ex. 2 at 22.)  And "in connection with this settlement," counsel was required to apply to the Illinois Circuit Court for an "aggregate award of attorneys' fees and expenses."  (Id. at 17.)  Further, the agreement noted that the "Final Order and Judgment in this action [would] include the [Illinois Circuit] Court's award of any attorneys' fees and expenses."  (Id. at 22.)

Additionally, Aon was required to "pay or cause to be paid to Class Counsel such Fees and Expenses as may be awarded by the Court within ten days after the Effective Date" that the settlement agreement was approved, subject to the Illinois Circuit Court's approval.[1]  (Compl. Ex. 2 at 22-23; Nowicki Aff. ¶5.)  If the final settlement was delayed because a party filed a notice of appeal, Aon was required to "deposit an amount equal to the amount of attorneys fees and expenses awarded by the Court to a bank for deposit," where the money would be held pending resolution of the appeal.  (Compl. Ex. 2 at 23.)  That same day, Kirby wrote a letter to Joyce explaining that Kirby would "consult reasonably contemporaneously with and discuss every and any material aspect of this settlement and the administration of this settlement with Edward T. Joyce."  (Joyce Aff., Ex. C [03/09/05 letter].)

---

[1] Under Judge Nowicki's understanding of the settlement agreement, it was her expectation that "if the settlement was approved and if an aggregate fee award was made, plaintiffs' counsel would either (a) reach an allocation agreement among themselves and ask [her] – as protector of the class – to approve such agreement, or (b) in the absence of such agreement, they would ask [her] to make the allocation.  Similarly, it was [her] expectation that if plaintiffs' counsel reached agreement regarding only a portion of the proposed aggregate fee award, they would ask [her] to approve that partial agreement and to allocate the balance."  (Nowicki Aff. ¶5.)

On May 23, 2005, Joyce sent a letter to Kirby, asking what share of the Aon fee Kirby thought Joyce would receive. (Joyce Aff., Ex. D [05/23/05 letter]). The letter explained that it had been "two months" and Joyce had heard "nothing from" Kirby. (Id.) Kirby responded to this letter on May 31, 2005, writing that "hopefully this week" Kirby would be able to reach a "preliminary consensus about the issue of fees, if any are obtained." (Joyce Aff., Ex. E [05/31/05 letter].)

On August 15, 2005, class counsel in the Aon action filed a fee petition with Judge Nowicki, requesting $19 million in counsel fees. (Joyce Aff., Ex. A [fee petition]; Nowicki Aff. ¶6.) The fee petition was submitted by Kirby, but "also on the brief" was Joyce, Futterman, Jacobs, F&W, and Patchett, who were billed as "Attorneys for Plaintiffs." (Joyce Aff., Ex. A at 12-13.) The fee petition did not disclose the existence of a purported fee allocation agreement, or make any suggestions as to how the proposed $19 million fee award should or would be allocated. (Nowicki Aff. ¶6.)

On March 24, 2006, before any fees had been awarded, Joyce filed a motion with Judge Nowicki of the Circuit Court of Cook County, Illinois, reasserting class counsel's position that they were "entitled to an award of $19 million in fees." (Joyce Aff., Ex. F [fee-allocation motion]; Nowicki Aff. ¶8.) The motion acknowledged that there was an agreement among class counsel on how the first 15% of the proposed fee should be allocated, in that "Joyce and Patchett were to receive the first 15% of fees awarded," and that they would "share some of that 15% with" F&W. (Joyce Aff., Ex. F at 2.) The motion requested that the Court allocate the remaining 85% of the fees as follows: Futterman and Jacobs (10%), Patchett (7.5%), Kirby (37.5%), Joyce (45%). (Id.; Nowicki Aff. ¶8; Linden Aff. ¶14.)

Three days later, on March 28, 2006, Kirby filed a complaint in federal court in the Southern District of New York against Joyce under Docket Number 06-CV-2433, assigned to Judge Richard Berman, alleging that there was already a contract governing the division of fees amongst counsel, and that by filing a fee allocation motion in Illinois Circuit Court, Joyce has refused to abide by this Contract.  (Joyce Aff., Ex. I [Kirby brief]; Joyce Aff. ¶10(i); Linden Aff. ¶16.)  On March 30, 2006, in a written decision by Judge Nowicki, the Circuit Court of Illinois approved the proposed settlement agreement and awarded $19 million in fees to class counsel, (Joyce Aff., Ex. B [fee award]), but did not allocate the fees amongst counsel.  (Id.)  That same day, the F&W firm filed a response to Joyce's allocation motion, and alleged that there was also a dispute over allocation of the first 15% of the proposed fee, which Joyce had claimed was not in dispute.  (Nowicki Aff. ¶9.)

On April 3, 2006, Judge Nowicki entered an order concerning Joyce's March 24, 2006 motion to allocate attorneys' fees among class counsel.  (Joyce Aff., Ex. H [Nowicki order].)  Judge Nowicki set a status conference on the motion for April 10, 2006 at 10:00 a.m., and further, the judge permitted any party desiring to submit written presentations regarding the motion until April 7, 2006 to do so.  (Id.)

On April 6, 2006, Patchett filed a response to Joyce's March 24, 2006 motion to allocate the $19 million in fees among class counsel.  (Joyce Aff., Ex. G [Patchett motion].)  In pertinent part, Patchett averred that he "agrees that the percentage fees awarded pursuant to the request in Paragraph 11 of Joyce's Motion," which gave him 7.5% of the remaining 85% of the $19 million, was "equitable as to the Patchett Law

Office and to Joyce & Associates," but Patchett took "no position as to the percentages awarded to" Futterman, Jacobs, or Kirby.  (Id.)

On April 7, 2006, Kirby filed a response in the Illinois Circuit Court to Joyce's motion to allocate fees amongst class counsel.  (Joyce Aff., Ex. I [Kirby brief]; Nowicki Aff. ¶11.)  In its brief, Kirby first argued that Judge Nowicki should stay any such action concerning the division of fees because there was already a pending action filed in federal district court in New York.  (Joyce Aff., Ex. I at 6.)  On the merits of the fee allocation, Kirby contended that there was already an enforceable agreement, which should be governed by New York law, which divided up counsel fees amongst the parties and which awarded Williamson's counsel 15% of the $19 million.  (Id. at 7-8.)  Lastly, Kirby contended that the issue of the division of fees was not yet "ripe" because the fee allocation awarded by Judge Nowicki was subject to "to reversal, in whole or in part, on appeal."  (Id. at 10.)  Accordingly, the order awarding $19 million in fees was not yet final.  (Id.)

On April 10, 2006, Judge Nowicki entered an order directing class counsel to select a mediator for the fee allocation dispute, and to report back to her on April 13, 2006 regarding who they selected.  (Nowicki Aff. ¶13; Joyce Aff., Ex. J [order.])  On April 13, 2006, Judge Nowicki ordered class counsel to mediate their fee allocation dispute, and to appear for a status report regarding the mediation on May 26, 2006. (Joyce Aff., Ex. K [04/13/06 order]; Nowicki Aff. ¶14.)

Thereafter, on April 18, 2006, Joyce filed a motion with Judge Nowicki, which was opposed by Kirby, to enjoin Kirby from prosecuting its New York federal lawsuit against Joyce pending completion of the Illinois Circuit Court's ordered mediation.

(Joyce Aff. ¶10(n); Nowicki Aff. ¶15; Linden Aff. ¶17.)   On April 20, 2006, Judge Nowicki denied Joyce the injunctive relief to enjoin Kirby's prosecution of the lawsuit in federal court.  (Joyce Aff., Ex. L [order]; Nowicki Aff. ¶16.)   However, Judge Nowicki ruled that if a motion to stay the lawsuit in New York federal court was presented and denied, Judge Nowicki's "order staying further proceedings herein pending completion of mediation w[ould] be vacated."   (Id.)   Thereafter, while the mediation was pending, Judge Nowicki retired from the bench.  (Nowicki Aff. ¶17.)

Joyce neither answered Kirby's New York federal court complaint nor filed a motion to stay the proceedings; allegedly, this was because Kirby's counsel informed Joyce that "no such motion was necessary -- all litigation would be held in abeyance until the mediation was over." (Joyce Aff. ¶10(o).)  In November 2006, Kirby sought a default judgment in New York.  (Joyce Aff. ¶10(p); Linden Aff. ¶16.)   Joyce opposed this motion for a default judgment, and he further argued that the New York court did not have jurisdiction over him.  (Id.)  In a November 8, 2006 letter concerning his opposition to the entry of a default judgment, counsel for Joyce wrote that Patchett had "aligned itself with the Joyce firm's position regarding allocation" of the fees.  (Compl. Ex. 3 [11/08/06 letter of counsel].)   A conference on the motion for a default judgment was held before Judge Berman on December 15, 2006.  (Id.)  Judge Berman urged Kirby and Joyce to submit their dispute to arbitration, and the parties entered into a stipulation to submit the fee dispute to binding arbitration, which was so ordered by the Court on April 18, 2007. (Joyce Aff. ¶10(q); Linden Aff. ¶18.)

On June 11, 2007, a preliminary arbitration hearing was held in Atlanta, Georgia between Kirby and Joyce before a former justice of the Georgia Supreme Court, the

Honorable Conley Ingram.  (Linden Aff. ¶19.)  On July 13, 2007, after full briefing on the issue, Judge Ingram rendered a "partial final award" concerning the issue of whether the Contract "covered the parties' entire agreement concerning representation of the class and allocation of attorneys' fees in the Daniel v. Aon, et al, No. 99-CF 11893 Class Action Litigation." (Linden Aff., Ex. K [partial final award].)  The arbitrator determined that the Contract did cover the parties' entire agreement.  (Id.)  On August 8, 2007, the arbitrator issued a "final award," determining that under "Paragraph 3 of the Contract," Williamson's counsel (Joyce, Patchett, and F&W) was entitled to "15% of the total award of $19,000,000, plus a lodestar fee, without enhancement, for their work on the matter unrelated to preparing the Williamson case."    (Compl. ¶31; Linden Aff. ¶19; Linden Aff., Ex. L [final award].)

Kirby claims that throughout the arbitration, Joyce's interests were fully aligned with those of Patchett, that Joyce "zealously represented his and Patchett's interest in the arbitration," and that "Joyce's aggressive, thorough representation of his position amounted to aggressive representation of Patchett's position in the arbitration." (Compl. ¶32.)  In response, Patchett contends that neither he nor his firm "were parties to the arbitration proceedings," that he never "participated, directly or indirectly, in the arbitration proceeding," and that no one was authorized to or did represent" him at the arbitration proceedings.  (Patchett Aff. ¶19.)

On August 15, 2007, Kirby moved the United States District Court for the Northern District of Georgia for an order confirming the arbitrator's fee allocation award, and on March 31, 2008, after extensive briefing on the matter, United States District Court Judge Timothy C. Batten confirmed the arbitrator's award.  (Linden Aff. ¶22;

Compl. ¶34.)  Joyce filed a notice of appeal with the Eleventh Circuit Court of Appeals on May 1, 2008, and on June 5, 2008, Kirby filed the instant action with this Court, seeking to enforce the Georgia arbitration award against Patchett.  (Compl. ¶36-37.)

On August 21, 2008, after the appeal was fully briefed, and after Kirby had filed a sanctions motion against Joyce that had also been fully briefed, Joyce moved to withdraw his appeal.   (Linden Aff. ¶23; Compl. ¶¶37-38.)   This motion was granted by the Eleventh Circuit on September 8, 2008.  (Linden Aff. ¶23.)

Meanwhile, the $19 million fee award, as well as Judge Nowicki's approval of the settlement, was affirmed by the Appellate Court of Illinois on June 19, 2008, but certain third parties then filed a petition for rehearing.  (Linden Aff. ¶13.)  On July 29, 2008, Patchett filed a Notice of Motion in the Circuit Court in Illinois "To Enforce Circuit Order and to Set Hearing to Allocate Fees."   (Linden Aff., Ex. N [motion].)   At an August 18, 2008 conference before the Circuit Court in connection with Patchett's motion to allocate attorneys' fees, Kirby argued that the Circuit Court did not have jurisdiction to hear the motion because of the pending petition for rehearing of the appeal of the underlying Aon settlement and legal fees award.  (Linden Aff. ¶24.)  The court agreed and did not hear the motion, instead, it scheduled a further "status conference" for October 24, 2008 to determine whether or not the appeal had been finally determined by that time.  (Id.)  On March 25, 2009, the Illinois Supreme Court denied the petition for leave to appeal the underlying settlement and fee allocation, and the Court remanded the matter to the Appellate Court. (03/25/09 Tr. at 2-3.)

**2. Defendant's Motion to Dismiss.**

Defendant puts forth three grounds for why dismissal of this action is warranted. First, Defendant argues that dismissal is appropriate because this Court lacks personal jurisdiction over him under both the New York State and the federal constitutional standards.  Next, Defendant contends that there currently "exists an almost decade long prior pending action involving the precise subject matter of this litigation that has been and is proceeding" in the Illinois Circuit Court, and therefore "this Court should abstain from exercising jurisdiction over this dispute" pursuant to the doctrine pronounced by the Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  Lastly, Defendant maintains that this action should be dismissed because venue in the Southern District of New York is improper due to the fact that "all (or nearly all) of the events and transactions underlying this case took place in Illinois."

A. This Court has personal jurisdiction over Patchett

The threshold question presented by this diversity action is whether this Court, under the long-arm statute of the State of New York and the Due Process clause of the United States Constitution, can exercise personal jurisdiction over Defendant.  See Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) ("The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee"); see also Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (in resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws;

15

and second, it must assess whether the court's assertion of jurisdiction under those laws comports with the requirements of due process).  This Court concludes that Plaintiff has put forth a *prima facie* showing of personal jurisdiction for the purposes of this motion to dismiss.

> i. *Patchett is subject to personal jurisdiction under New York's Long Arm Statute*

New York Civil Practice Law and Rules ("CPLR") Section 302(a)(1) provides that a court may exercise personal jurisdiction over any foreign defendant who "transacts any business within the state."  By this "single act statute," proof of "one transaction in New York is sufficient to invoke jurisdiction even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Deutsche Bank Sec., Inc. v. Montana Bd. of Investors, 7 N.Y.3d 65, 71 (2006); see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., 450 F.3d 100, 103 (2d Cir. 2006) (to establish jurisdiction under section 302(a)(1), the defendant must have transacted business within the state, and the claims asserted must arise from that business activity).

In a motion to dismiss such as this where no evidentiary hearing has been held and the court relies solely upon pleadings and affidavits, a plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists." Cutco Industries v. Naughton, 806 F.2d 361, 364-66 (2d Cir. 1986).  Further, the proof of jurisdiction presented to the court must be construed in the manner "most favorable to plaintiff and all doubts are resolved in its favor." Id.; see also Credit Lyonnais Sec. (USA) v. Alcantra, 183 F.3d 151, 154 (2d Cir. 1999) (on a motion to dismiss the court must accept the plaintiff's version of the facts upon which jurisdiction is predicated;

however, the plaintiff must later "still prove the jurisdictional facts by a preponderance of the evidence, either at an evidentiary hearing or at trial.")[2]

Additionally, a Court obtains personal jurisdiction over a defendant regardless of whether it is the defendant himself who transacts business within the state or whether it is the defendant's partner or co-venturer who transacts business within the state. See NY CPLR § 302(A) (provides for jurisdiction where anyone who "in person or through an agent … transacts any business within the state"); see also CutCo Indus., 806 F.2d at 364-66 ("[J]oint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others" for jurisdictional purposes"); Pennie & Edmonds v. Austad Co., 681 F. Supp. 1074, 1077-78 (S.D.N.Y. 1988) (under New York law, "purposeful activity" within New York by an agent or joint-venturer of the non-domiciliary is also sufficient to establish personal jurisdiction);

Here, by the express terms of the Contract executed between Kirby, Patchett, and Joyce, Patchett and Joyce were jointly representing their client Williamson in connection with the class action against Aon. Moreover, according to Plaintiff, Joyce "made clear" during the negotiations over the Contract that "he, Patchett and Freed & Weiss were working as partners and joint venturers in their representation of Williamson pursuant to the Contract…" (Linden Aff. ¶5.) Accordingly, because Patchett and Joyce were partners in this matter, Joyce's contacts with New York are to be considered for jurisdictional purposes under Section 302(a) of the NY CPLR. Nat'l Union Fire Ins. v.

---

[2] Hence, even if Plaintiff has put forth a *prima facie* showing of personal jurisdiction for the purposes of this motion to dismiss, that does not mean that the issue of personal jurisdiction is settled. Rather, at any point prior to trial Defendant can move this Court pursuant to Fed. R. Civ. P. 12(i) to hold a hearing to determine the issue of personal jurisdiction. If this Court "holds an evidentiary hearing -- in a manner similar to determining the issue at trial -- the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." See Cutco Industries, 806 F.2d at 364-65.

BP Amoco PLC, 319 F. Supp. 2d 352 (S.D.N.Y. 2004) (the determination of whether one is an "agent" for jurisdictional purposes requires an "analysis of the realities of the relationship in question rather than the formalities of agency law").   And taking the entirety of Defendant and Joyce's contacts with New York in relation to this matter into account, Kirby has provided *prima facie* evidence establishing that Patchett, "on his … own initiative project[ed] himself … into [New York] in order to engage in a sustained and substantial transaction of business," and therefore made himself subject to jurisdiction in this state.  Fischbarg v. Doucet, 9 N.Y.3d 375, 280 (2007).

In that regard, while Defendant contends that his only contact with New York in connection with Aon was his faxing of a copy of the Contract to Kirby's office in New York, this account of his contacts with New York is incomplete.  First, the contract at issue in the present litigation was negotiated by phone and fax between Kirby, a New York law firm, and the Illinois law firm of Edward T. Joyce in December of 2000. (Linden Aff. ¶5.)   Joyce told Kirby that the client Williamson had originated with Patchett, and "at all times Joyce made clear that he was negotiating, with express authority on his own behalf and on behalf of Patchett and Freed & Weiss."   (Id.)  The agreement provided that Joyce and Patchett would "assist[ ]" Kirby in the prosecution of this action.  Lastly, Patchett and Joyce both faxed their signatures to New York for the purposes of entering into the contract.  Defendant's actions here can be deemed to have been a "purposeful creation of a continuing relationship with a New York corporation" that suffices to establish personal jurisdiction.  George Reiner v. Schwartz, 41 N.Y.2d 648, 653 (1977).

During the more than five year prosecution of the Aon action, Joyce and Patchett repeatedly and systematically transacted business with Kirby in New York for the express purpose of prosecuting the Aon class action.  These contacts with Kirby's offices in New York included a continuous stream of phone calls, e-mails, and faxes between the parties, and the parties routinely exchanged marked-up documents via electronic communication as well.  (Linden Aff. ¶¶8-9.)  All of these communications concerned the Aon action. Indeed, Patchett himself repeatedly contacted Kirby in New York by email, written correspondence and telephone, (Id. ¶¶8(a)-(p)), and Joyce physically met with Kirby in New York on more than one occasion in connection with the Aon action.  (Id. ¶10.)

These contacts between Joyce and Patchett and the Kirby firm in New York are sufficient to establish a *prima facie* case that Patchett transacted business in New York for purposes of long-arm jurisdiction.  See Deutsche Bank, 7 N.Y.3d at 72 (negotiation of contract via telephone with New York trader coupled with eight other telephonic transactions over preceding thirteen months, established personal jurisdiction in New York); see also Fischbarg, 9 N.Y. 3d at 382   (jurisdiction proper where a California resident retained via telephone and mail a New York lawyer whose work was performed within the state); Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17-18 (1970) (jurisdiction proper where a California resident participated in a New York art auction through an open telephone line).  By entering into a contract to perform services on a class action initiated by and under the supervision of a New York law firm, Patchett should reasonably have expected to defend its actions in New York.[3]

---

[3] The cases relied upon by Defendant to demonstrate lack of personal jurisdiction here involve considerably less contact with the jurisdiction.  In Traver v. Officine Meccaniche Toschi Spa, 233 F. Supp. 2d 404, 410-

ii. *Exercising Personal Jurisdiction Over Patchett is Consistent with Due Process*

In <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310, 316 (1945), the Supreme Court held that due process requires that a defendant have "sufficient minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  The due process test therefore has two parts: the "minimum contacts" inquiry and the "reasonableness inquiry."  <u>Metropolitan Insurance Company v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996).  Patchett challenges jurisdiction here under both prongs of the due process test, and therefore, both will be discussed.

To satisfy due process, a non-domiciliary must have "minimum contacts" with the forum State.  Where the claim arises out of the defendant's contacts with the forum -- as it does here -- minimum contacts exist where the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being 'haled into court' there."  <u>See</u> <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 305 F.3d 120, 127 (2d Cir. 2002); <u>see also</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (specific jurisdiction exists when a defendant has "purposefully directed his activities at a resident of the forum, and the litigation results from alleged injuries that arise out of or relate to those injuries).

---

11 (N.D.N.Y. 2002), defendants signed a contract outside of New York and redirected a single shipment to New York that was originally to be delivered elsewhere.  Those defendants did not engage in the type of extensive conduct in New York that Patchett and Joyce had here.  In <u>National Telephone Directory Consultants, Inc. v. Bell South Advertising & Publishing Corp.</u>, 25 F. Supp. 2d 192, 196-97 (S.D.N.Y. 1998), the contract was drafted outside of New York and involved no negotiations in, and called for no supervision in, New York.  Moreover, the contract had nothing to do with the cause of action alleged.  <u>Id.</u> at 196-97.  Further, even though the defendant sent mailings to New York residents, those mailings were "mass mailings" sent to locations across the U.S. <u>Id.</u> at 197.

"[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp., 471 U.S. at 473 (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).   Although neither the "unilateral activity" of a plaintiff nor "random," "fortuitous" or "attenuated" contacts by a defendant will support jurisdiction, jurisdiction over a defendant is proper where the defendant's contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Id. at 475.   In determining whether a defendant has "minimum contacts" with the forum state, like under the New York long-arm statute, courts can take into account the activities of a defendant's co-venturer or agent to determine whether the defendant had minimum contacts with the forum state.   See, e.g., Chrobak v. Hilton Int'l, 2008 U.S. Dist. LEXIS 76888, *12 (S.D.N.Y. 2008); Stewart v. Adidas, 1997 U.S. Dist. LEXIS 5778, *18 n.5 (S.D.N.Y. 1997); Bonney v. Roelle, 117 F.3d 1413 (4th Cir. 1997); Finegan v. Autotransportes Tufesa, 2009 U.S. Dist. LEXIS 14949, *39-40 (D. Ariz. 2009); Hill v. Shell Oil Company, 149 F. Supp.2d 416, 418 (N.D. Ill. 2001) ("The joint venture … provides that the minimum contacts of one co-venturer are attributable to other co-venturers such that personal jurisdiction over one means personal jurisdiction over all.   Because there was enough evidence to suggest that [defendants] Shell, Equilon and Motiva were engaged in a joint venture … we concluded that Motiva could not be dismissed from this lawsuit given the sufficient Illinois contacts of Shell and Equilon.")   Lastly, physical presence within a forum state is not required; commercial business transacted solely by electronic

and wire communication, if purposefully directed at a forum resident, will support jurisdiction.  Burger King, 471 U.S. at 476.

Defendant argues that the "minimum contacts" test here is not satisfied because the "present suit does not arise out of and is not related to Patchett's 'contacts' with New York," and that "other than faxing Kirby the executed Letter Agreement, Patchett had no contact with New York in connection with the underlying agreement."   But it is inaccurate for Patchett to assert that the suit here does not arise out of his contacts with New York.  On the contrary, Patchett knowingly entered into a contract to provide legal services under the supervision of Kirby, a New York law firm.  By signing the Contract and then faxing it to Kirby in New York, a seed of the present lawsuit was sown.  Therafter, Patchett's communications with Kirby enabled that seed to grow and prosper.

Further, for many of the reasons already explained, supra, Patchett forged ties to New York in connection with this contract.  Patchett, motivated by his desire to profit from his provision of legal services, regularly dealt with Kirby, who was located in New York, in connection with the prosecution of the Aon class action.  Moreover, Patchett's co-venturer Joyce twice traveled to New York in connection with the class action lawsuit.  By entering into a contract to participate as a member of the Executive Committee to assist Kirby as lead counsel and become part of a joint venture with a New York law firm, Patchett should have realized the prospect of later defending himself in New York in connection with his participation in the joint venture.

Minimum contacts alone, however, do not satisfy due process.  Rather, the prospect of defending a suit in the forum State must also comport with notions of "fair play and substantial justice."  Burger King Corp., 471 U.S. at 476.  The Supreme Court

has ruled that in considering whether "fair play and substantial justice" is satisfied, courts must take into account: "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 113 (1987)

Patchett asserts that jurisdiction here violates notions of "fair play and substantial justice" because: it is inconvenient for him to travel to New York; he is not admitted to practice law in New York and has had to retain local counsel to defend himself; Kirby is already involved in the Illinois action and it would not inconvenience Kirby to require that all issues (including the fee allocation) be decided in Illinois; there is already an Illinois action which will resolve the fee allocation issue underlying this dispute, and relatedly; the "Illinois court has the primary if not the sole interest in the fee award and it is that Court's duty, in the exercise of its discretion, to make a fee award which comports with any social policies regarding class action fee awards."

Kirby responds that: this Court has a specific interest in resolving this matter as Plaintiff is seeking to enforce the terms of an arbitration judgment which was obtained pursuant to an order of this Court; that there is no similar action pending in Illinois; that this forum is "completely convenient for most of the parties involved in the underlying dispute," and; that it would not be unduly burdensome for Patchett to travel to New York.

After evaluating the factors pronounced in Asahi Metal, it is apparent that the exercise of jurisdiction over Patchett here comports with fair play and substantial justice.

First, while it is undoubtedly "inconvenient" for Patchett to litigate this case in New York, that is the only factor weighing in Patchett's favor. This Court has a strong interest in adjudicating this dispute given that Kirby is seeking to enforce an order for binding arbitration previously entered by Judge Berman of this Court. Further, Kirby's interest in obtaining convenient and effective relief weighs in favor of litigating this case in this Court, as the determination by this Court that Patchett is bound by the confirmed arbitration award could end this litigation. Additionally, the interests of the judicial system in obtaining the most efficient resolution of the controversy favors litigation in New York as no progress has been made in the Illinois state court in resolving the fee allocation dispute, and the parties would essentially be forced to relitigate the issue in Illinois. Lastly, Patchett, perhaps led by his co-venturer Joyce, is seeking to remove this action to the state court of Illinois because he and Joyce are unhappy with the decision of the Georgia arbitrator. The social policies of the states and the courts would not be served by permitting Defendant and Joyce to forum-shop in their efforts to gain higher legal fees.

     B. <u>Dismissal of this case is not warranted under the Colorado River doctrine.</u>

It is axiomatic that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. <u>Colorado River</u>, 424 U.S. at 817; <u>Village of Westfield v. Welch's</u>, 170 F.3d 116 (2d Cir. 1999). However there are, nonetheless, several traditional categories of abstention. <u>See, e.g.</u>, <u>Younger v. Harris</u>, 401 U.S. 37 (1971) (abstention appropriate where there is a pending state criminal proceeding); <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943) (abstention appropriate to avoid interference with attempts to establish coherent state policy and issues of peculiarly local concern).

As pertinent here, under the doctrine set by the Supreme Court in Colorado River, abstention is appropriate where "state and federal courts exercise concurrent jurisdiction simultaneously." Village of Westfield, 170 F.3d at 120 (quoting Burnett v. Physician's Online, 99 F.3d 72, 76 (2d Cir. 1996)); Dittmer v. County of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998) (the "principles of Colorado River are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions'"). Thus, a "finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River." Dittmer, 146 F.3d at 118.

"Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). "Complete identity of parties and claims are not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." GBA Contr. Corp. v. Fidelity & Deposit Co., 2001 U.S. Dist. LEXIS 32 (S.D.N.Y. 2001). Put differently, "parallelism is achieved when there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." In re Comverse, 2006 U.S. Dist. LEXIS 80195, *5 (E.D.N.Y. 2006); see also Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004) (same).

Defendant here has demonstrated that this action and the actions pending in Illinois are sufficiently parallel. There are essentially three separate actions concerning this case that are currently pending in Illinois. First, there is the initial settlement agreement which contained the $19 million fee request. The Supreme Court of Illinois

recently denied leave to hear this case, and the matter has been remanded to the Illinois Appellate Court, which will then send the case back to the trial court for final resolution and enforcement of the settlement agreement (and $19 million fee award).  Second, there is a motion filed by Joyce on March 24, 2006, currently being held in abeyance, which sought a determination of the allocation of the $19 million fee award among class counsel.  Third, there is a second motion filed by Patchett on July 29, 2008, which asks the Illinois Circuit Court "To Enforce Circuit Court Order and to Set Hearing to Allocate Fees."  This motion has not yet been heard in Illinois because the settlement agreement and fee award had not yet been finalized.  (Linden Aff. ¶24.)  Thus, the crux of the actions pending in Illinois concern the award of counsel fees and the subsequent distribution of those counsel fees amongst class counsel.

As Plaintiffs assert, the lawsuit here is not, on its face, a lawsuit to allocate class counsel fees awarded as part of the Aon class action.  Rather, it is a breach of contract action to confirm that the JAMS arbitration award issued in Georgia on August 8, 2007 collaterally estopps Patchett from disputing the factual and legal conclusions contained in the confirmed award.  (See Compl. ¶51.)  However, and crucially here, the arbitrator's award did allocate attorneys' fees. The arbitrator interpreted Paragraph 3 of the December 2000 fee contract and concluded that the Contract entitled Williamson's counsel to "15% of the total award of the $19,000,000, plus a lodestar fee, without enhancement, for [Williamson's counsel's] work on the matter unrelated to preparing the Williamson case." (Linden Decl., Ex. L [08/08/07 final award].)  Thus, the arbitrator's decision effectively determined that Williamson's counsel (which includes Patchett) is entitled to 15% of the $19 million plus an hourly fee for work unrelated to preparing

Williamson's case.  Plaintiff's action here would have the effect of binding Patchett to that fee allocation.  Accordingly, as both the Illinois actions and the action here would allocate attorneys' fees amongst class counsel, the actions are "parallel proceedings." See GBA Contr. Corp. v. Fidelity & Deposit Co., 2001 U.S. Dist. LEXIS 32 (S.D.N.Y. 2001) (parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation").

However, despite the fact that the cases here and in Illinois are parallel proceedings, the Second Circuit Court of Appeals has pronounced that the "mere fact that parallel proceedings are pending in state court is insufficient to justify" the District Court's 'virtually unflagging obligation' to exercise federal jurisdiction." Gregory v. Daly, 243 F.3d 687, 702 (2d Cir. 2001) (quoting Colorado River, 424 U.S. at 813). Indeed, as the Supreme Court warned, abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and "abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Colorado River, 424 U.S. at 813.

Accordingly, the determination of whether abstention is appropriate under Colorado River involves weighing a six-factor balancing test, looking at: "1) the assumption of jurisdiction by either court over any res or property; 2) the inconvenience of the federal forum; 3) the avoidance of piecemeal litigation; 4) the order in which jurisdiction was obtained; 5) whether state or federal law supplies the rule of decision; and 6) whether the state court proceeding will adequately protect the rights of the party

seeking to invoke federal jurisdiction." Village of Westfield, 170 F.3d at 121; Burnett, 99 F.3d at 87.

In considering the six factors the "balance [must be] heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983); Burnett, 99 F.3d at 76. Further, no "single factor is necessarily dispositive … and the 'weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.'" Village of Westfield, 170 F.3d at 121 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 16). The decision of whether to stay the federal suit under Colorado River lies within the sound discretion of the district court. Moses H. Cone Mem'l Hosp., 460 U.S. at 12. A balancing of the factors here demonstrates that abstention is not warranted.

i. *Jurisdiction over the Res*

Patchett contends that it is "undisputed that jurisdiction over the underlying 'res'," which in this case is the $19 million in legal fees, "has been unequivocally asserted by the Illinois state court which presided over the underlying class action litigation and issued the award and is ultimately responsible for allocating the award." In a December 9, 2008 filing with this Court in connection with the companion case of Stone v. Joyce, 06 CV 2433 (RB), Kirby asserted that pursuant to court order, the "legal fees in the Aon action are being held in a bank account in Chicago under the control of Kirby McInerney LLP and Aon's counsel, Kirkland and Ellis." (Declaration of Richard L. Stone, dated December 9, 2008 ("Stone Decl."), ¶2.)

The Stone Declaration asserts that Joyce has indicated that "when the Aon fees become available for distribution [which could be as early as December 15, 2008], he

intends to have them placed under the custody and control of the Circuit Court of Cook County, Illinois."  (Id. ¶¶2-3.)  On December 10, 2008, Judge Berman ordered that the "status quo" be maintained, essentially precluding all parties from taking any action respecting the $19 million being held in a Chicago bank.  (12/10/08 Order of this Court in 06-cv-2433.)  Accordingly, as a judge of this Court has exercised jurisdiction over the "res" as recently as December 2008, both courts have asserted jurisdiction over the "res." This factor is a basis for retaining jurisdiction by this Court.  See Goldentree Asset Mgtm. v. Longaberger, 448 F. Supp. 2d 589, 593-94 (S.D.N.Y. 2006) (in light of factor's neutrality, "the exercise of this Court's jurisdiction over the matter is favored.")

            ii. *Convenience*

        Patchett next argues that this federal forum is "undeniably inconvenient for all parties and witnesses (except, presumably, Kirby)."  Defendant contends that "all of the defendants reside in Illinois, all of the events underlying this dispute -- including but not limited to the prosecution of the Aon class action -- took place in Illinois."  And, "any and all witnesses and evidence regarding the prosecution of that class action -- again, other than possibly witnesses and evidence particular to [ ] Kirby -- are located in Illinois."

        However, Patchett's determination of convenience is overstated.  In this action to enforce the Georgia arbitration award against Illinois Defendant Patchett, it is highly unlikely that many witnesses will need to travel to New York from Illinois to prosecute this action.  Further, while it is true that Defendant is a citizen of Illinois, it is not just the residence of Defendant that is dispositive.  Rather, the plaintiff's state of residence must be considered as well.  See Neuman v. Harmon, 965 F. Supp. 503, 510 (S.D.N.Y. 1997)

(New York federal court not inconvenient where the plaintiff resided in New York and the defendant resided in South Carolina).  And here, Plaintiff's entire base of operations is located in New York.

Moreover, while Defendant is correct that the underlying lawsuit took place in Illinois, the contract at issue here concerning the distribution of legal fees was allegedly drawn up in New York, and Defendant's signature on the contract was faxed to Plaintiff's office in New York.  Hence, as it is likely that evidence and witnesses in this case will be located in both New York and Illinois, this factor is neutral, and therefore weighs against abstention by this Court.

### iii. Piecemeal Litigation

Patchett argues that abstention here would avoid piecemeal litigation because "the Illinois state court has complete and unfettered jurisdiction over the class action and this jurisdiction necessarily extends to include allocation of the fee award, which was issued by the state court, and will be ultimately be allocated by the state court."  Patchett contends that "the state court has a fiduciary obligation to the class to ensure that the fee award, and its allocation, is fair and reasonable."  And "because the allocation of fees is ultimately the responsibility of the state court, this Court should exercise abstention and allow the state court to adjudicate the present dispute in order to avoid piecemeal litigation."  In essence, Patchett maintains that Illinois is the proper venue for this action, and he rests his argument on the fact that allowing this case to proceed will result in the maintenance of duplicative proceedings that could result in inconsistent outcomes.  See Woodford, 239 F.3d at 524 (the primary circumstance in which federal courts abstain in

order to avoid piecemeal litigation "has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel.")

But even prior to the commencement of this lawsuit there was potential for piecemeal litigation that could result in inconsistent outcomes not preventable by principles of res judicata and collateral estoppel.  Joyce and Kirby submitted to binding arbitration, later approved by a federal judge in Georgia, which interpreted the contract entered into between Williamson's counsel and Kirby in December, 2000.  Meanwhile, being held in abeyance was Joyce's motion to allocate the fees held by class counsel.  Hence, while Joyce will be precluded from arguing that he is entitled to a greater share of the fees than that contained in the arbitration order because he had a full and fair opportunity to litigate this issue before the arbitrator, the other class counsel might not be so bound by the Georgia arbitration, and the Illinois Circuit Court could very well disagree with the arbitrator's construction of the contract.  Accordingly, even if this Court were to abstain, there remains a risk of piecemeal litigation producing inconsistent results.  See, e.g., Woodford, 239 F.3d at 524 (the "classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties").

Allowing this lawsuit here to continue could avoid any potentially inconsistent piecemeal litigation in the Illinois state courts.  This is because Kirby asserts he has resolved "all outstanding disputes" with the other firms involved in the fee allocation dispute, (Plaintiff's October 23, 2008 Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Memo"), at 13 fn. 8), and that the only dispute that currently remains is the

one between Kirby and Patchett.  Hence, as Kirby seeks an order from this Court that Patchett is bound by the arbitration decision, if this order based on collateral estoppel is entered by this Court,[4] the amount of the lodestar would still need to be determined, but all material litigation concerning the underlying Aon fees would be resolved.  See Buechel v. Bain, 97 N.Y.2d 295, 303 (N.Y. 2001) (collateral estoppel applies where same issue has been decided and parties are in privity); Mario Valente v. AAK Limited, 2004 U.S. Dist. LEXIS 5049 (S.D.N.Y. 2004) (under New York law, collateral estoppel applies to a non-party who was in privity and had its interests represented by a contesting party).

Accordingly, while there is a danger that piecemeal litigation in this matter could bring inconsistent results, this danger would not be lessened by this Court's abstention on Plaintiff's claim against Patchett.

iv. *Order to Jurisdiction*

As to the fourth factor -- the order in which jurisdiction was obtained -- the parties argue about which action was filed first.  Patchett takes the position that this current dispute began in Illinois state court in 1999 when the opening salvos in the Aon action were filed.  Kirby contends that the current action began on June 5, 2008 when it filed its complaint in the Southern District of New York, and that any parallel action was not commenced until almost eight weeks later, when Patchett filed a motion to allocate the

---

[4] It is likely that an order collaterally estopping Patchett from challenging the Georgia arbitration award will be entered considering that both Patchett and Joyce signed the same fee splitting contract on December 28, 2000, and Patchett has aligned himself with Joyce from the time the Contract was initially signed in 2000 through to the present day dispute over the fees.  (Linden Aff. Exs. A [Contract], O [11/08/06 letter from Joyce's counsel to this Court stating that "Patchett firm has aligned itself with Joyce firm's position regarding the allocation"], P [September, 2008 emails from Patchett's counsel purporting to speak for both Joyce and Patchett]; Joyce Aff. Ex. G [April 6, 2006 motion filed by Patchett where he agreed to the distribution of fees proposed by Joyce).

fees in Illinois. The law is clear, however, that this "factor does not turn exclusively on the sequence in which the cases were filed," but rather focuses on "how much progress has been made in the two actions."  Village of Westfield, 170 F.3d at 122 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 21).

Here, the state court action regarding the allocation of fees has stalled.  Once the initial settlement agreement had been reached in 2006 and Judge Nowicki made her award of $19 million in counsel fees, the matter was quickly appealed to the Illinois Appellate Court, and the Illinois Supreme Court has only just recently denied leave to appeal and remanded the case to the Appellate Court.  Moreover, absolutely no progress has been made to decide the motions (submitted by Joyce and the similar one by Patchett) to allocate the awarded fees.  Conversely, since the initial federal action in Stone v. Joyce to enforce the Contract was filed with this Court in 2006, and binding arbitration concerning the proper interpretation of the Contract was commenced, completed, and finalized.  Thus, the progress of this case in the federal proceeding has far outstripped the progress made in Illinois.  Therefore, this factor too militates in favor of the exercise of this Court's jurisdiction.

v. *Governing Law*

"The source of the law to be applied is only an important factor when federal law issues exist in a case, and in that event the existence of such issues weighs in favor of the exercise of federal jurisdiction."  Prosperity Realty, Inc. v. Haco-Canon, 724 F. Supp 254, 257 (S.D.N.Y. 1989) (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 23-24). Patchett argues that Illinois law governs this case, while Kirby contends that this case is governed by New York law.  Regardless of which state laws apply, the claims asserted by

Plaintiff here revolve around a breach of contract and collateral estoppel.  This type of dispute is hardly the type of "novel or particularly complex" issue of state law warranting this Court's abstention.  See Village of Westfield, 170 F.3d at 124 ("the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex").

> vi. *Whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.*

Lastly, in evaluating the issue of whether Kirby's rights will be adequately protected by the Illinois State courts, "federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Village of Westfield, 170 F.3d at 124.  As noted, the state court proceedings have been plagued by interminable delays.  When contrasted with the possibility of resolving the major issues of the fee allocation promptly through collateral estoppel in federal court, it appears that the most likely option for a prompt resolution of this matter is for this matter to remain in federal court.  See Village of Westfield, 170 F.3d at 124 (where district court was aware of the slow progress of state court proceeding, it did not have the discretion to find that this factor weighed in favor of abstention).

> vii. *Weighing the Factors*

As noted, the Court's task under Colorado River is "not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, [the Court] must ascertain whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction."  Village of Westfield, 170 F.3d at 124.  Here, none of the

factors conclusively favor abstention, and none of the factors are so "extraordinary" as to demand abstention, especially concerning the slow pace of the "complementary" Illinois state court proceedings.  Accordingly, the motion for abstention is denied.

3. Venue Is Appropriate In this District

Lastly, Patchett argues that under 28 U.S.C. Section 1391(a), venue is improper here because "all (or nearly all) of the events and transactions underlying this case took place in Illinois, and not in this district."

28 U.S.C. § 1391(a) provides that:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in 1) a judicial district where any defendant resides, if all defendants reside in the same State, 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or 3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Under 28 U.S.C. § 1391(a) courts are not, in general, required to determine the "best venue," but merely a logical one with a substantial connection to the litigation.  See Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992).  The Southern District of New York easily meets this standard.

The contract at issue, which is the essence of the fee dispute, was negotiated and entered into in New York.  Further, Kirby, who commenced the Aon action and served as the primary counsel behind the lawsuit, is based in New York.  Lastly, this Court has previously ordered binding arbitration of the underlying fee dispute terms in the Contract, and plaintiffs are seeking to enforce that arbitration judgment here.  Thus, both the initial contractual arrangements and the more recent arbitration was ordered by this Court,

venue is appropriate because a "substantial part of the events or omissions giving rise to the claim occurred" in New York.

### 3. Conclusion

Patchett's motion to dismiss for lack of jurisdiction and improper venue is DENIED.   Accordingly, Plaintiff's motion to strike new affidavits and arguments submitted with Defendants' reply in their motion to DENIED as moot.


IT IS SO ORDERED.

Dated: New York, New York
      April 23, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Opinion and Order faxed to:

Attorney for Plaintiff
Kirby McInerney LLP
Peter Linden
Richard L. Stone
New York, NY 10022
Tel:  212-371-6600
Fax:  212-751-2540

Attorneys for Defendants
Law Offices of Thomas M. Mullaney
708 Third Avenue, Suite 2500
New York, NY 10017
Tel:  212-223-0800
Fax:  212-661-9860